[No. B150621. Second Dist., Div. One. May 31, 2002.]

BLAS LOPEZ, Plaintiff and Appellant, v.
C.G.M. DEVELOPMENT, INC., Defendant and Respondent.

**COUNSEL**

Law Offices of Michael J. Piuze, Michael J. Piuze and John Keiser for Plaintiff and Appellant.

Donner, Fernandez & Lauby and Kirk A. Lauby for Defendant and Respondent.

**OPINION**

**MALLANO, J.**—Plaintiff, an employee of a subcontractor on a construction project, was injured on the job and brought this action against the owner of

the property, seeking damages for personal injuries. The property owner moved for summary judgment on the ground that it had not breached a duty to plaintiff. The trial court granted the motion. Plaintiff has appealed.

We conclude that summary judgment was properly granted because this action is barred by the exclusive remedy provisions of the Workers' Compensation Act, and the property owner did not affirmatively contribute to the cause of plaintiff's injuries.

## I

### BACKGROUND

On October 23, 1997, C.G.M. Development, Inc. (CGM), a property owner, entered into a contract with Dekkon Development, Inc., a general contractor, to develop commercial property located at 17232 Railroad Street in the City of Industry. The contract provided in part: "[Dekkon] shall supervise and direct the Work, using its best skill and attention. [Dekkon] shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Contract, unless Contract Documents give other specific instructions concerning these matters."

Dekkon entered into a subcontract with L & E Builders to frame the roof. L & E's work complied with the architectural plans drafted by the architect, John Cataldo. The materials were supplied by Dekkon (with the exception of nails) in accordance with the general contract, which stated: "Unless otherwise provided in the Contract Documents, the Contractor shall provide and pay for labor, materials, equipment, tools, construction equipment and machinery . . . and other facilities and services necessary for proper execution and completion of the Work . . . ."

George Sanchez, the construction superintendent and an employee of Dekkon, scheduled the work of the subcontractors and supervised their work. He also reviewed the plan details with the architect, engineers, city inspectors, and the owners of the building. Sanchez wrote daily reports on the progress of the construction. Once a week, he held a safety meeting with the workers. Sanchez was the only construction superintendent on the site; no one worked directly for him; there was no foreman.

Larry Endresen, a partner in L & E, supervised the employees on the roof. Sanchez told Endresen to provide his employees with safety ropes or similar equipment. On June 8, 1998, Endresen brought his crew down from the roof

until he could supply them with safety equipment, more specifically, harnesses. Endresen told the employees that they were to wear the harnesses while working in designated areas on the roof. L & E was a licensed contractor but did not have workers' compensation insurance. In other words, L & E was illegally uninsured. (See Lab. Code, §§ 3700, 3700.5; all further section references are to the Labor Code unless designated otherwise.)[1]

Peichin Cheng was a vice-president of CGM and represented the company with respect to the construction of the building. Sanchez would contact her when he needed an "owner decision," namely, anything that was not in the plans. He never said anything to her about the use of safety equipment or that there were any problems with the subcontractors. Between January 19, 1998, and June 11, 1998—a period of almost five months—Cheng visited the site about 12 times, almost always to complain that the project was behind schedule. At no time did Cheng supervise L & E's employees, nor did she ever tell them how to do their job.

One of L & E's employees was plaintiff Blas Lopez. On June 18, 1998, Lopez was at his workstation, standing on a wooden platform that was attached to the roof with a metal hanger. He was not wearing a harness or other safety equipment. The metal hanger failed to support the wooden platform, causing Lopez to fall approximately 30 feet onto the concrete floor below. He sustained serious injuries.

In this action, Lopez sued CGM on a negligence theory, alleging that it had maintained dangerous working conditions at the jobsite and had not provided Lopez with safety equipment. Other parties were sued on various theories. Several cross-complaints were filed. At some point, a second amended complaint was filed.

On August 28, 2000, CGM filed a motion for summary judgment. Lopez and other parties filed opposition papers, contending that CGM was liable under the "peculiar risk" doctrine. The parties later filed supplemental papers. On February 9, 2001, the trial court granted the motion, explaining its decision in a three-page order. Judgment was entered in favor of CGM. Lopez filed a timely appeal.[2]

---

[1] To be insured for purposes of workers' compensation, an employer can either purchase coverage from an insurance company or satisfy the requirements to be self-insured. (§ 3700.)

[2] In his opening brief, Lopez's "Statement of Facts" occupies less than one page and contains no references to the record. We have reviewed the record in an attempt to describe the evidence submitted by the parties. Regardless, Lopez cannot be heard to complain that we

## II

### DISCUSSION

Based on the principles governing summary judgment motions and the substantive law applicable to Lopez's claim, we conclude that CGM was entitled to summary judgment.

### A. *Summary Judgment*

A motion for summary judgment must be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

█ " 'A defendant seeking summary judgment has met the burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action cannot be established [or that there is a complete defense to that cause of action]. . . . In reviewing the propriety of a summary judgment, the appellate court independently reviews the record that was before the trial court. . . . We must determine whether the facts as shown by the parties give rise to a triable issue of material fact. . . . [T]he moving party's affidavits are strictly construed while those of the opposing party are liberally construed.' . . . We accept as undisputed facts only those portions of the moving party's evidence that are not contradicted by the opposing party's evidence. . . . In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences therefrom must be accepted as true." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 178-179 [70 Cal.Rptr.2d 96], citations omitted.)

█ "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. . . . There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493], citation and fn. omitted.)

---

have overlooked any disputed or undisputed material facts. (See *Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [85 Cal.Rptr.2d 521].)

■ "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . ." (*Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 850.)[3]

## B. *Peculiar Risk Doctrine*

■ Lopez contends that he can recover damages from CGM based on the "peculiar risk" doctrine. Under that doctrine, "a person who hires an independent contractor to perform work that is inherently dangerous can be held liable for tort damages when the contractor's negligent performance of the work causes injuries to others." (*Privette v. Superior Court* (1993) 5 Cal.4th 689, 691 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*).)

In *Privette*, a property owner hired an independent contractor to install a new roof on his duplex. While attempting to carry several buckets of hot tar up a ladder, one of the contractor's employees fell to the ground and was burned by the tar. He filed suit against the property owner. The owner moved for summary judgment, which the trial court denied. The Court of Appeal summarily denied the owner's writ petition. The Supreme Court granted review and reversed, explaining:

"A critical inquiry in determining the applicability of the doctrine of peculiar risk is whether the work for which the contractor was hired involves a risk that is 'peculiar to the work to be done,' arising either from the nature or the location of the work and ' "against which a reasonable person would recognize the necessity of taking special precautions." ' . . . The term 'peculiar risk' means neither a risk that is abnormal to the type of work done, nor a risk that is abnormally great; it simply means ' "a special, recognizable danger arising out of the work itself." ' . . . [¶] . . . [¶]

"Under the Workers' Compensation Act [(§§ 3200-6208)] (hereafter the Act), all employees are automatically entitled to recover benefits for injuries 'arising out of and in the course of the employment.' (Lab. Code, § 3600, subd. (a); . . . .) The workers' compensation system was created to provide, in the words of our state Constitution, 'for the comfort, health and safety and general welfare of any and all workers and those dependent upon

---

[3]In moving for summary judgment, CGM's notice of motion referred to the *first* amended complaint, not the operative, second amended complaint. Lopez does not raise this as an issue on appeal.

them for support to the extent of relieving from the consequences of any injury or death incurred or sustained by workers in the course of their employment . . . .' . . . [¶] . . . [¶]

"When the conditions of compensation exist, recovery under the workers' compensation scheme 'is the exclusive remedy against an employer for injury or death of an employee.' . . . [¶] . . . [¶]

"When an independent contractor causes injury to the contractor's own employee, the Act's 'exclusive remedy' provision shields the contractor from further liability for the injury. Yet, under [an] expansive view of the peculiar risk doctrine . . . , the person who hired the independent contractor can, for the same injury-causing conduct of the contractor, be held liable in a tort action for the injuries to the contractor's employee. . . .

"[T]he 'principal' who hires an independent contractor should be subject to no greater liability 'than its [independent contractor] agent,' whose exposure for injury to an employee is limited to providing workers' compensation insurance. . . . [T]he rule of workers' compensation exclusivity, which shields an independent contractor who pays workers' compensation insurance premiums from further liability to its employees for on-the-job injuries, should equally protect the property owner who, in hiring the contractor, is indirectly paying for the cost of such coverage, which the contractor presumably has calculated into the contract price. . . . [¶] . . . [¶]

"[T]o allow an independent contractor's employees who incur work-related injuries compensable under the workers' compensation system to also seek damages under the doctrine of peculiar risk from the person who hired the contractor would give those employees an unwarranted windfall. [T]o permit such recovery would give these employees something that is denied to other workers: the right to recover tort damages for industrial injuries caused by their employer's failure to provide a safe working environment. . . . Moreover, to impose vicarious liability for tort damages on a person who hires an independent contractor for specialized work would penalize those individuals who hire experts to perform dangerous work rather than assigning such activity to their own inexperienced employees." (*Privette, supra,* 5 Cal.4th at pp. 695-700, citations and fn. omitted.)

After *Privette,* the Supreme Court revisited the peculiar risk doctrine in *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*). There, an employee of a framing subcontractor was injured when a framed wall fell on him. He sought benefits under the Workers' Compensation Act and also filed a civil action

against the general contractor. The high court concluded that the general contractor was not liable, stating:

"The doctrine of peculiar risk, as relevant here, is described in two sections of the Restatement Second of Torts, section 413 and section 416. Under section 413, a person who hires an independent contractor to do inherently dangerous work, but who fails to provide in the contract or in some other manner that special precautions be taken to avert the peculiar risks of that work, can be liable if the contractor's negligent performance of the work causes injury to others. Under section 416, even if the hiring person has provided for special precautions 'in the contract or otherwise,' the hiring person can nevertheless be liable if the contractor fails 'to exercise reasonable care to take such precautions' and the contractor's performance of the work causes injury to others. . . . [¶] . . . [¶]

"[The plaintiff] asserts that *Privette, supra,* 5 Cal.4th 689, bars recovery by an employee of an independent contractor only in cases based on section 416 of the Restatement Second of Torts, which, [the plaintiff] observes, holds the hiring person *vicariously* liable for the independent contractor's failure to take the special precautions provided for 'in the contract or otherwise.' Thus, [the plaintiff] contends, *Privette* has no bearing on cases such as his that are premised on the theory of section 413 of the Restatement, which holds the hiring person *directly* liable for failing to provide in the contract or in some other manner for the taking of special precautions. [The plaintiff's] argument rests on the distinction some courts and commentators have drawn between these two sections, characterizing the liability under section 413 as 'direct' liability, while describing the liability under section 416 as 'vicarious' liability. . . . [¶] . . . [¶]

"[C]ontrary to plaintiff['s] assertion, our decision in *Privette, supra,* 5 Cal.4th 689, bars employees of a hired contractor who are injured by the contractor's negligence from seeking recovery against the hiring person, irrespective of whether recovery is sought under the theory of peculiar risk set forth in section 416 or section 413 of the Restatement Second of Torts. In either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage." (*Toland, supra,* 18 Cal.4th at pp. 256-267, fns. omitted, italics added and omitted.)

In *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235 [108 Cal.Rptr.2d 617, 25 P.3d 1096] (*Camargo*), the Supreme Court discussed the peculiar risk doctrine again. In that case, a dairy hired an independent contractor to

scrape manure out of its corrals and haul it away. One of the contractor's employees died when his tractor rolled over as he was driving on top of a large mound of manure. The employee's wife filed suit against the dairy, alleging that it had been negligent in hiring the independent contractor (the employee's employer) because the dairy had failed to determine if the employee could operate the tractor safely. The Supreme Court, relying on *Privette* and *Toland*, held that the dairy was not liable. As the court stated:

"Section 411 [of the Restatement Second of Torts], entitled 'Negligence in Selection of Contractor,' provides: 'An employer is subject to liability for physical harm to *third persons* caused by his failure to exercise reasonable care to employ a competent and careful contractor [¶] (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or [¶] (b) to perform any duty which the employer owes to *third persons*.' (Rest.2d Torts, at p. 376, italics added.)

"[The dairy] contends an employee of a contractor is not a *third person* for the purposes of section 411 . . . . [¶] . . . [¶]

"[A]s we explained in *Toland*, the rationale of our decision in *Privette* extends to cases where the hirer is *directly* negligent in the sense of having failed to take precautions against the peculiar risks involved in the work entrusted to the contractor. To repeat: In *Toland*, we rejected the plaintiff's argument that *Privette* did not bar recovery for direct liability under section 413, but only for vicarious liability under section 416. . . . '. . . In either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage.' . . .

"For the same reasons, an employee of a contractor should be barred from seeking recovery from the hirer under the theory of negligent hiring set forth in section 411 . . . ." (*Camargo, supra*, 25 Cal.4th at pp. 1241-1244.)

More recently, in *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*), the Supreme Court held that "a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." (*Id.* at p. 202, italics in original.) The court's holding was based in part on section 414 of the Restatement Second of Torts, which states: "One who entrusts work to an independent contractor,

but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." (Rest.2d Torts, § 414, quoted in *Hooker, supra,* 27 Cal.4th at pp. 201, 206.)

In distinguishing *Privette, Toland,* and *Camargo,* the court in *Hooker* explained: "While it is true that the cost of workers' compensation insurance coverage is as likely to have been calculated into the contract price paid by the hirer in a retained control case as it is in peculiar risk or negligent hiring cases, the contract price could not have reflected the cost of injuries that are attributable to the hirer's affirmative conduct. The contractor has no way of calculating an increase in the costs of coverage that are attributable to the conduct of third parties, which is why the employee, despite the existence of the workers' compensation system, is not barred from suing a third party who proximately causes the employee's injury. . . .

"[I]f a hirer does retain control over safety conditions at a worksite and negligently exercises that control in a manner that affirmatively contributes to an employee's injuries, it is only fair to impose liability on the hirer.

"Similarly, if an employee of an independent contractor can show that the hirer of the contractor affirmatively contributed to the employee's injuries, then permitting the employee to sue the hirer for negligent exercise of retained control cannot be said to give the employee an *unwarranted windfall*. The tort liability of the hirer is warranted by the hirer's own affirmative conduct. The rule of workers' compensation exclusivity 'does not preclude the employee from suing anyone else whose conduct was a proximate cause of the injury' . . . , and when affirmative conduct by the hirer of a contractor is a proximate cause contributing to the injuries of an employee of a contractor, the employee should not be precluded from suing the hirer." (*Hooker, supra,* 27 Cal.4th at pp. 212-214, italics in original.)

The high court also commented that "[s]uch affirmative contribution need not always be in the form of actively directing a contractor or contractor's employee. There will be times when a hirer will be liable for its omissions. For example, if the hirer promises to undertake a particular safety measure, then the hirer's negligent failure to do so should result in liability if such negligence leads to an employee injury." (*Hooker, supra,* 27 Cal.4th at p. 212, fn. 3.)

The facts in *Hooker* were simple. The California Department of Transportation (Caltrans) hired a general contractor to construct an overpass. One of

the contractor's employees, who operated a crane, allowed construction vehicles to use the overpass while the crane was in operation. To do so, the crane operator had to adjust the crane in a manner that made it less stable. On one such occasion, the crane tipped over, throwing the employee to the pavement and killing him. His wife filed a negligence action against Caltrans.

The Supreme Court held that the claim was barred because Caltrans did not *require* the crane to be operated in that way. Rather, Caltrans *permitted* that means of operation: "[T]here was no evidence Caltrans's exercise of retained control over safety conditions at the worksite affirmatively contributed to the adoption of that practice by the crane operator. There was, at most, evidence that Caltrans's safety personnel were aware of an unsafe practice and failed to exercise the authority they retained to correct it." (*Hooker*, *supra*, 27 Cal.4th at p. 215.)

In *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219 [115 Cal.Rptr.2d 868, 38 P.3d 1094] (*McKown*)—a companion case to *Hooker*—the court upheld a jury verdict finding Wal-Mart partially liable for injuries to an employee of an independent contractor. Wal-Mart had hired the contractor to install sound systems in its stores. The work required the use of forklifts, and Wal-Mart requested that the contractor use Wal-Mart's forklifts in performing the job. As it turned out, the Wal-Mart forklifts were not properly equipped, resulting in injury to the plaintiff.

The Supreme Court noted: "[W]hen a hirer of an independent contractor, by negligently furnishing unsafe equipment to the contractor, affirmatively contributes to the injury of an employee of the contractor, the hirer should be liable to the employee for the consequences of the hirer's own negligence. 'The general supervisory right to control the work so as to insure its satisfactory completion in accordance with the terms of the contract does not make the hirer of the independent contractor liable for the latter's negligent acts in performing the details of the work. . . . An owner is not liable for injuries resulting from defective appliances *unless he has supplied them* or has the privilege of selecting them or the materials out of which they are made . . . or unless he exercises active control over the men employed or the operations of the equipment used by the independent contractor. . . .' " (*McKown*, *supra*, 27 Cal.4th at p. 225, italics added in *McKown*.)

 In the present case, Lopez presents two arguments as to why he should be able to maintain a civil action against CGM. First, he contends that *Privette* and *Toland* do not apply here because his employer, L & E, did not have workers' compensation coverage, unlike the employers in *Privette*

and *Toland*. Second, he asserts that CGM controlled conditions at the jobsite in a way that affirmatively contributed to his injuries. We reject both contentions.

### 1. *Workers' Compensation Coverage*

 The workers' compensation system is designed to (1) provide an employee with prompt, limited compensation for an injury, (2) insulate the employer from tort liability for work-related injuries, (3) shift the cost of industrial injuries to the cost of the goods produced, and (4) encourage workplace safety. (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399]; *State Compensation Ins. Fund v. Brown* (1995) 32 Cal.App.4th 188, 199 [38 Cal.Rptr.2d 98].)

 In general, the Workers' Compensation Act provides an employee with his or her exclusive remedy for a work-related injury. Subject to narrow exceptions, "where the . . . conditions of compensation concur" (§ 3600, subd. (a)), an injured employee cannot maintain a civil action against his or her employer (§ 3602, subd. (a)) or another employee (§ 3601, subd. (a)).[4]

"[T]he legal theory supporting such exclusive remedy provisions is a presumed 'compensation bargain,' pursuant to which the employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations on the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. . . . The function of the exclusive remedy provisions is to give efficacy to the theoretical 'compensation bargain.' " (*Shoemaker v. Myers* (1990) 52 Cal.3d 1, 16 [276 Cal.Rptr. 303, 801 P.2d 1054, 20 A.L.R.5th 1016], citations omitted.)

"In the most explicit terms, [the Act] declares the exclusive character of the employer's [workers'] compensation liability in lieu of any *other* liability

---

[4]The conditions of compensation concur where, among other things, (1) the employee is performing service growing out of and incidental to his or her employment and is acting within the course of his or her employment at the time of the injury; (2) the injury is proximately caused by the employment, either with or without negligence; (3) the injury is not caused by the intoxication of the injured employee, either by reason of alcohol or a controlled substance; (4) the injury is not intentionally self-inflicted; (5) the employee has not willfully and deliberately caused his or her own death; (6) the injury does not arise out of an altercation in which the injured employee is the initial physical aggressor; (7) the employee has not sustained an injury caused by his or her commission of a felony or a misdemeanor for which he or she is convicted; and (8) the injury does not arise out of voluntary participation in any off-duty recreational, social, or athletic activity not constituting part of the employee's work-related duties. (See § 3600, subd. (a).)

to *any* person. [The exclusivity provisions] form a complementary, unmistakable declaration of legislative policy that the cost of industrial injury, at the scale fixed by the compensation law, shall be borne by the employing enterprise." (*Pacific Gas & Elec. Co. v. Morse* (1970) 6 Cal.App.3d 707, 713-714 [86 Cal.Rptr. 7], italics in original.) And if a third party tortfeasor is involved, an injured employee can pursue a civil action as to that party. (*Id.* at p. 714; *Privette, supra,* 5 Cal.4th at pp. 697-698; § 3852.)

▆▆ Because L & E was not insured for workers' compensation, the exclusivity provisions do not protect it from suit. (§ 3706.) Lopez can file a civil action against L & E seeking tort relief. (See *Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 987 [101 Cal.Rptr.2d 325].) Of course, in *Privette, supra,* 5 Cal.4th 689, the court held that "the rule of workers' compensation exclusivity, which shields an independent contractor who pays workers' compensation insurance premiums from further liability to its employees for on-the-job injuries, should equally protect the property owner who, in hiring the contractor, is indirectly paying for the cost of such coverage, which the contractor presumably has calculated into the contract price." (*Id.* at p. 699.) The same rationale was applied in *Toland, supra,* 18 Cal.4th at pages 261 and 266.

Under the *Privette/Toland* analysis, the property owner and the independent contractor are treated alike—the injured employee cannot sue either of them. In light of that parallel treatment, Lopez argues that the property owner in *this* case should be treated like the independent contractor in *this* case—he can sue L & E, so he should be able to sue CGM. As Lopez points out, because L & E did not have workers' compensation insurance, the contract price did not include the cost of that coverage, and CGM paid relatively less for L & E's labor. Since CGM did not pay L & E for the cost of coverage, so the argument goes, it is not entitled to the protection of the exclusive remedy provisions. We disagree.

*Privette* recognized that "the 'principal' who hires an independent contractor should be subject to *no greater liability* 'than its [independent contractor] agent,' . . . ." (*Privette, supra,* 5 Cal.4th at p. 699, italics added.) Thus, *Privette* did not foreclose the possibility that the principal could be subject to the same, less, or no liability compared to the independent contractor.

*Privette* made clear that the doctrine of peculiar risk is founded on principles of equity and public policy. (*Privette, supra,* 5 Cal.4th at pp. 695, 701; see *Culligan v. State Comp. Ins. Fund* (2000) 81 Cal.App.4th 429, 439 [96 Cal.Rptr.2d 656].) Equity and public policy would not be served by penalizing CGM for L & E's wrongdoing. L & E's failure to obtain workers'

compensation coverage—a misdemeanor (§§ 3700, 3700.5)—should not expose CGM to civil liability. As the court stated in *Privette*, "To encourage *employers* to obtain workers' compensation insurance for their employees, the Act's 'exclusive remedy' clause does not apply in favor of *employers* that fail to obtain such insurance, and consequently they are not immune from tort liability for such injuries." (*Privette, supra,* 5 Cal.4th at p. 698, italics added.) Consistent with that incentive, L & E—Lopez's employer—not CGM, the property owner, should be subject to suit.

Nor did CGM have a duty to ascertain whether L & E was properly insured. "The fundamental policy underlying the workers' compensation laws is that those hiring others to perform services should bear the risk of injuries incurred in the undertakings. When the person seeks to hire the services through a licensed independent contractor, it is *reasonable to anticipate* that the independent contractor will insure against the risk and that the cost of the insurance will be passed on as part of the price of the contract. Thus it is *reasonable to exonerate* the hirer of the independent contractor." (*State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 13 [219 Cal.Rptr. 13, 706 P.2d 1146], italics added.)

Finally, Lopez is incorrect in asserting that he is not covered by workers' compensation. "The [Uninsured Employers] Fund was created to ensure that workers employed by illegally uninsured employers are not deprived of workers' compensation benefits. (Lab. Code, § 3716, subd. (b).) Although the Fund's obligation is, to a large extent, coextensive with that of the uninsured employer (Lab. Code, §§ 3715, 3716), once the Fund pays the entire award, the Fund becomes subrogated to the employee's claim and may proceed directly against the uninsured employer to recover the entire amount of the award from him. (Lab. Code, §§ 3717, 3719 . . . .) . . . ." (*Rinaldi v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 217, 224-225 [244 Cal.Rptr. 637].) Of significance, the court in *Privette* noted the existence of the Fund in stating that "[u]nder the Workers' Compensation Act . . . , *all* employees are automatically entitled to recover benefits for injuries 'arising out of and in the course of the employment.'" (*Privette, supra,* 5 Cal.4th at pp. 696-697, citing § 3716, italics added.)

In sum, the peculiar risk doctrine, as applied in *Privette* and *Toland*, does not permit Lopez to maintain this action against CGM.

### 2. *Retained Control*

Lopez also seeks damages against CGM on the ground that "a hirer is liable to an employee of a contractor insofar as a hirer's exercise of

retained control affirmatively contributed to the employee's injuries." (*McKown, supra,* 27 Cal.4th at p. 225.) This argument rests in part on Lopez's contention that the architectural plans were defective.

"[M]ere retention of the ability to control safety conditions is not enough. '[A] [property owner] owes no duty of care to an employee of a subcontractor to prevent or correct unsafe procedures or practices to which the [owner] did not contribute by direction, induced reliance, or other affirmative conduct. The mere failure to exercise a power to compel the subcontractor to adopt safer procedures does not, without more, violate any duty owed to the plaintiff. . . .'" (*Hooker, supra,* 27 Cal.4th at p. 209; see *Widman v. Rossmoor Sanitation, Inc.* (1971) 19 Cal.App.3d 734, 743 [97 Cal.Rptr. 52] [employer may be liable "where [construction] plans and specifications *prepared by the employer* negligently require[] something to be done which is inherently dangerous or wrong and injury occurs" (italics added)].)

CGM's contract with the general contractor, Dekkon, provided that Dekkon would "be solely responsible for and have control over construction means, methods, . . . and procedures." The contract also obligated Dekkon to provide "materials, equipment, tools, construction equipment and machinery . . . for proper execution and completion of the Work."

During construction, the contracting parties performed as contemplated in the written contract. George Sanchez, a Dekkon employee and the construction superintendent, supervised the work of the subcontractors and held weekly safety meetings. Sanchez told Larry Endresen to supply the L & E roofing crew with safety equipment. Endresen provided harnesses and instructed his employees to wear them. CGM's vice-president, Peichin Cheng, communicated with Sanchez and occasionally appeared at the jobsite to express her opinion that the construction was behind schedule. She did not supervise any of the work or tell any of the workers how to do their job.

Further, even if the architectural plans were defective (as stated in the declarations of Endresen and Joseph Bonadiman, a civil engineer), Lopez did not offer any evidence that CGM knew or should have known about the defect or that CGM prepared the plans with respect to the framing of the roof. The proffered evidence, which goes to the potential liability of the architect, does not suggest that CGM affirmatively contributed to Lopez's injury.

As a matter of law, CGM did not retain control over work conditions at the jobsite, and it did not affirmatively contribute—by act or omission—to Lopez's injuries. It follows that CGM was entitled to summary judgment.

## III

### DISPOSITION

The judgment is affirmed.

Spencer, P. J., and Ortega, J., concurred.