Filed 12/31/13  Cornerstone Developmet Partners v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CORNERSTONE DEVELOPMENT PARTNERS, INC., | |
| Petitioner, | E057726 |
| v. | (Super.Ct.No. RIC10024480) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| DOMINGO ALVAREZ, | |
| Real Party in Interest. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired Judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Petition granted.

Diederich & Associates and Richard L. Scott, for Petitioner.

No appearance for Respondent.

1

Barnes, FitzGerald, Francisconi & Zeman, Michael J. FitzGerald and Eric P. Francisconi for Real Party in Interest.

Plaintiff and real party Domingo Alvarez was injured when he fell from a ladder while performing work on property managed by defendant and petitioner Cornerstone Development Partners, Inc. (Cornerstone.) At the time, Alvarez was employed by RCA Construction (RCA), which had been hired by Cornerstone to remove a sign.

Alvarez brought this action for personal injuries against Cornerstone, inter alia. As Cornerstone was not named in the original complaint, but was added as a Doe (see Code Civ. Proc., § 474), the pleading is not illuminating as to plaintiff's theory of relief; but by the time Cornerstone filed its motion for summary adjudication, plaintiff was asserting that Cornerstone was liable for his injuries because it had retained control over the project. Plaintiff also relied on the theory that Cornerstone was liable because it offered supposedly inadequate payment to RCA, so that the latter could not afford a safer boom lift.

Cornerstone's motion for summary judgment was premised on the rule of *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*), as amplified in *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 (*Toland*), *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235 (*Camargo*) and *Hooker v. Department of Transportation* (2002) 27 Cal.4th 198 (*Hooker*). Cornerstone's evidence—presented through a declaration by its property manager, Janet Dunham—showed that Cornerstone managed the property (a shopping center) under contract with the owners, Encore Plaza, LLC and Bullhead Plaza, LLC. Dunham had sent a request to RCA for a quote for the work of removing three

2

signs. RCA offered to do the work for a total of $675, which Dunham accepted. Dunham also stated that RCA provided all personnel, supplies, and tools, and that Cornerstone did not "oversee, instruct, supervise or control any of the workers . . . ." The actual contract documents are informal and brief, and do not refer to the operative mechanics of performance.

Pertinent to this case,[1] plaintiff argued that because Cornerstone's contract with the property owners required it to "monitor[] . . . independent contractors responsible for the repair and maintenance of Property," Cornerstone could be liable under the "retained control" rule, which we discuss *infra*. He also argued that Cornerstone should have provided roof access so the contractor's ladder could have been better secured; that Cornerstone breached its duty to keep the premises "clean, attractive, and safe"; and, as noted above, that it failed to make "adequate payment" to RCA. In supplemental filings, plaintiff further argued that Cornerstone acted tortiously in not hiring a "dedicated and licensed sign company" but instead hired a company (RCA) that was allegedly "not properly equipped to perform the work." Plaintiff proffered evidence to the effect that a "qualified" company in possession of a crane or safety lift would have charged at least $1,200 for the work that RCA was to have done.[2]

---

[1] Plaintiff also sought additional time in which to conduct discovery, but the trial court granted this request, and this is now moot.

[2] We accept the validity of the evidence without question, because it is in the final analysis irrelevant.

The trial court denied Cornerstone's motion for summary judgment, signing an order drafted by plaintiff's counsel and finding triable issues concerning failure to make adequate payment and hire a qualified contractor, breach of its supposed duty to monitor, and breach of its equally supposed duty to maintain safe premises. Cornerstone filed this petition, authorized by Code of Civil Procedure section 437c, subdivision (m)(1).

DISCUSSION

The standards governing motions for summary judgment and appellate review of rulings on such motions are well established and need not be discussed in detail. The party moving for summary judgment (here, Cornerstone) bears the initial burden of demonstrating that there are no triable issues of material fact. If this showing is sufficient, the burden then shifts to the opposing party, who must make a prima facie showing of the existence of a triable issue of material fact. (*Y.K.A. Industries, Inc. v. Redevelopment Agency of City of San Jose* (2009) 174 Cal.App.4th 339, 353.) Our review involves a determination of legal issues and is therefore de novo. (*Chavez v. Carpenter* (2001) 91 Cal.App.4th 1433, 1448.)

We conclude that Cornerstone did carry its initial burden and that plaintiff failed to present evidence that would create a triable issue of any material fact.

The issue of a landowner's (or manager's)[3] liability for injury to the employee of an independent contractor working on the property bedeviled lower courts and attorneys

---

[3] We will generally use the term "owner" to describe the defendant in the various cases, recognizing that Cornerstone's actual role is slightly different. It is, however, a "hirer" as that term is sometimes alternatively used in the cases.

4

for years through the "peculiar risk" doctrine, until the Supreme Court undertook to limit and clarify the circumstances under which such liability existed in *Privette*, *supra*, 5 Cal.4th 689. The court noted that the common law rule of nonliability for injury to the employee of an independent contractor had become riddled with exceptions, the most significant of which was the "peculiar risk" rule. This judicially created doctrine imposed liability on the property owner if the work to be done posed some inherent risk of injury. Although the rule was originally intended to protect neighbors and bystanders, it was later expanded to cover employees of an independent contractor performing work on the property. (*Id*. at pp. 693-696.)

However, in California employees are covered by a no-fault system of workers' compensation, which, except in unusual circumstances, is the employee's only remedy against the employer. (Lab. Code, § 3602; *Privette*, *supra*, 5 Cal.4th 689, 697.) A corollary to this rule is that if a third party contributes to the injury, the employer's obligations have been discharged by payment of benefits to the employee and the third party cannot make a claim for equitable indemnity. (Lab. Code, § 3864.) The result, according to the *Privette* court, was that in a case of serious injury, the owner, who might not have been negligent at all, would wind up paying a disproportionately large amount of damages while the directly negligent employer would pay only the relatively modest workers' compensation benefits. (*Privette*, *supra*, 5 Cal.4th 689, 698, 700.)[4]

---

[4] The court also pointed to two other undesirable effects of allowing "peculiar risk" recovery against the property owner: allowing employees of independent contractors—and no other employees—in essence to recover for employer negligence;

*[footnote continued on next page]*

*Privette* goes on to hold that the employee of an independent contractor cannot recover from the property owner who does not cause the injuries, thus largely abolishing the "peculiar risk" doctrine in this context. (*Privette, supra*, 5 Cal.4th 689, 702.)

In *Toland,* the court made clear that the rule of *Privette* applies to attempts to fix liability under either section 413 or section 416 of the Restatement Second of Torts.[5] (*Toland, supra*, 18 Cal.4th 253, 270.) And in *Camargo*, the court ruled that the employee could not circumvent *Privette/Toland* by framing his complaint against the owner under a tort theory of "negligent hiring." (*Camargo, supra*, 25 Cal.4th 1235, 1238.) This result stemmed again from the Supreme Court's characterization of the owner's negligence as "'in essence "vicarious" or "derivative"'" because it was still the contractor's acts or omissions that directly caused the injury. (*Id*. at p. 1244.) Finally, in *Hooker*, the court explained that although the property owner might be liable to the employee where the owner had retained control over the manner in which the contractor performed the work, such liability would be limited to situations in which the owner *actually exercised* the right of control and this exercise contributed to the injury. (*Hooker, supra*, 27 Cal.4th

---

*[footnote continued from previous page]*
and, penalizing property owners who act responsibly by hiring an expert to perform dangerous work rather than attempting to do it personally or through untrained employees of the owner.

[5]  Section 413 describes the "peculiar risk" situation in which the owner fails to provide that safety precautions be taken to avert the risk; section 416 applies when the contract requires that special precautions be taken but the contractor fails to do so. The problem dealt with in *Toland* arose because section 416 liability had sometimes been described as "vicarious" and section 413 liability as "direct" (because there was an affirmative failure by the owner). The argument was therefore made that *Privette* only applied to "vicarious" section 416 liability. *Toland* rejected this claim.

198, 202.)  Under the most recent pronouncement from the Supreme Court, it is clear that any duty (such as that arising from general safety laws or regulations) that the owner may owe to the employees of a contractor may be, and implicitly is, delegated to the contractor performing work.  (*Seabright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 603 (*Seabright Ins. Co.*).)

Finally, although these cases are founded on the fact that an employee may seek benefits under workers' compensation, it does not matter if, in a specific case (as plaintiff asserts here) the employer does not have workers' compensation insurance.  (*Lopez v. C.G.M. Development, Inc.* (2002) 101 Cal.App.4th 430, 445 (*Lopez*).)  This is for two reasons:  the employee of an uninsured contractor may enforce any claim for benefits against the Uninsured Employers Benefits Trust Fund (Lab. Code, § 3716); and, the owner owes no duty to the employee to make sure that the contractor/employee carries the required insurance.  (*Lopez, supra*, 101 Cal.App.4th 430, 445.)

With this legal framework firmly established, we turn to plaintiff's efforts to dismantle it.[6]

Plaintiff first argues that there is a triable issue as to whether RCA was a qualified contractor and whether Cornerstone made "adequate payment."  We need not deal in

---

[6] We find no need to address some of plaintiff's points in detail.  To the extent that plaintiff asserts (in part correctly) that Cornerstone argues facts not contained in the record (such as that he "lost his balance" and fell), under our analysis Cornerstone needs no facts other than those we have recited, which *are* in the record.  The mechanics of plaintiff's fall are simply irrelevant.  Of course, if plaintiff had responded with any evidence that his fall was due to Cornerstone's direct affirmative negligence, that would be different, but he did not.

7

detail with the supposed triable issues on this point,[7] because the first prong of this argument is answered by *Camargo*, as discussed above:  plaintiff cannot rely on any theory that the owner negligently selected an incompetent contractor.

The theory that an owner may be *directly* liable because the contract price does not enable the contractor to take safety measures that the plaintiff deems necessary is novel, to say the least—so novel that we can find no existing authority to refute it.  We can only explain that just as it is the contractor's duty to ensure the safety of its workers, so only the contractor could have any liability for not demanding a contract price that would enable it to do so.  (See also *Gravelin v. Satterfield* (2011) 200 Cal.App.4th 1209, 1217 (*Gravelin*) [no owner liability for fall from roof where it was contractor's "poor choice" to use a short ladder and inappropriate access point which caused danger].)[8]  The Supreme Court has made it abundantly clear that plaintiff's assertion that "RCA is not to blame because it did not choose to use a scissor lift to complete the sign removal" is

---

[7]  For example, plaintiff argues that Cornerstone either knew or should have known that RCA did not possess the "scissor lift" that he claims would have allowed him to do the work safely.  But any such claim imposes a burden on the owner, which is flatly, and repeatedly, rejected by the Supreme Court cases we have cited.

[8]  Plaintiff attempts to distinguish *Gravelin* on the basis that the contractor in that case had a choice of how to proceed, whereas RCA did not due to the "inadequate" contract price.  For the reasons stated in the body of this opinion, we also reject any such distinction.

untenable; if there *is* any blame, it must be placed upon RCA. *Camargo* is *not* distinguishable and Cornerstone committed *no* "direct" negligence.[9]

Plaintiff then attempts to bring the "retained control" exception into play by relying on Cornerstone's duty to the *owners* of the property to "monitor" independent contractors. (He wisely does not contend that the contract with RCA gives Cornerstone any such power.) It does not. Aside from the fact that "monitor" suggests watchfulness rather than active engagement, plaintiff strenuously claims that Cornerstone grossly breached this duty in that Cornerstone affirmatively contends that it did not "oversee, instruct, supervise or control any of the workers for RCA." It is hard to imagine an argument which goes farther from the point. Any duty to "monitor" the work was owed to the owner, not to plaintiff. The management agreement is utterly devoid of any language that would suggest an intent to benefit employees of independent contractors. (See generally 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, §§ 685 *ff.*, pp. 771 *ff.*) Furthermore, it is virtually nonsensical to suppose that the owner would have wished to impose upon Cornerstone a duty to exercise active control over repair projects that would lead to potential tort liability for the owner if that control were to be negligently exercised. In the absence of any evidence to the contrary, we simply decline

---

[9] We also note that the evidence shows that RCA calculated the bid proposal price on its own; Cornerstone's solicitation of a proposal did not contain a suggested price.

to view any such interpretation of the management contract as viable. The management agreement imposed no duty on Cornerstone running to plaintiff.[10]

Equally unavailing is plaintiff's reliance on the claim that Cornerstone breached its duty to provide a "clean, attractive, and safe environment" at the shopping center. Without extended discussion, we will agree that Cornerstone may have owed some duty to tenants and customers to keep the premises safe. ("Clean and attractive," not so much; any such duty presumably ran to the owners, although tenants might colorably claim to be third-party beneficiaries.) But there was nothing inherently unsafe about the premises, only the manner in which work was performed on them.[11] (See *Gravelin*, *supra*, 200 Cal.App.4th 1209, 1217.) Furthermore, while Cornerstone might conceivably be liable to

---

[10] Plaintiff argues that Cornerstone "admits" that it had the ability to "monitor" the work, but "chose not to." So? As we have discussed above, *Hooker, supra*, 27 Cal.4th 198 holds that the owner is only liable if there is retained control *and* a negligent exercise of that control. That is, there is no liability for choosing not to exercise the right.
Plaintiff's attempt to rely on *Ray v. Silverado Constructors* (2002) 98 Cal.App.4th 1120 (*Ray*) in this context is misplaced. In *Ray*, an employee of a contractor was killed while attempting to remove debris on a highway project. Plaintiff's theory was that the road leading to the project should have been closed due to danger, which would have prevented his access to the fatal site. (*Id*.) However, the employer/subcontractor had no authority to close the road, while the owner *did* have such control and failed to effect the closure. In finding potential liability on the owner, *Ray* distinguished *Hooker* on the basis the employer in *Ray* was contractually prohibited from taking the necessary safety measures that remained in the owner's power. In this case, RCA was in no way prohibited from taking safety measures or using safe equipment, as we have explained. *Ray* does not apply.

[11] Plaintiff insists that the premises were somehow unsafe because there is a slope to the ground at the base of the subject building where the sign was. We reiterate that this condition is not inherently unsafe, but becomes so (as was the case in *Gravelin*) only if inappropriate ladders or other devices are used to obtain access to the sign itself.

10

a patron who tripped over a tree root, any duty to plaintiff as a visitor was legally delegated to his employer. (See *Seabright Ins. Co.*, *supra*, 52 Cal.4th 590, 603.)

In summary, the "triable issues" specified by the trial court were legally meaningless, and so are any additional points raised by plaintiff before this court. Cornerstone established that it hired a licensed contractor and that it took no role whatsoever in the performance of the work. Nor, in any legally cognizable sense, did it interfere with the contractor's ability to perform the work safely. It breached no duty owed to plaintiff and was entitled to summary judgment.

## DISPOSITION

Let a peremptory writ of mandate issue, directing the Superior Court of Riverside County to vacate its order denying Cornerstone's motion for summary judgment, and to enter a new order granting said motion.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties. Petitioner to recover its costs.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

HOLLENHORST
Acting P. J.

We concur:


MILLER
J.


CODRINGTON
J.

11