[No. D043626. Fourth Dist., Div. One. Dec. 29, 2004.]

DOUGLAS BELL, Plaintiff and Appellant, v.
GREG AGEE CONSTRUCTION, INC. et al., Defendants and Respondents.

## Counsel

Tosdal, Smith, Steiner & Wax, Thomas L. Tosdal and Jon Y. Vanderpool for Plaintiff and Appellant.

Morris & Sullivan, Michael Sullivan, Will Lemkul and B. J. Haeck for Defendants and Respondents.

## Opinion

**O'ROURKE, J.**—Douglas Bell appeals from a summary judgment in favor of general contractor Greg Agee Construction, Inc., and its principal Greg Agee (collectively Agee) on Bell's complaint for personal injuries he sustained after a wall fell on him at his workplace. Agee successfully moved for summary judgment on the ground there was no evidence it affirmatively contributed to Bell's injuries, and therefore Bell's causes of action were barred by *Privette v. Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721] (*Privette*) and other cases adopting its rationale. On appeal, Bell contends the public policy rationales of *Privette* and its progeny do not apply because his employer was not covered by workers' compensation insurance at the time of his accident. We conclude Bell's employer's uninsured status does not affect Agee's liability (or lack thereof) under *Privette*, and accordingly affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In April 2002, Bell, an employee of Kincaid Construction Co. (Kincaid), was working at a construction site when a gust of wind caused a framed wall to fall on him, injuring his back. Kincaid was the roofing subcontractor for the project; Agee was the general contractor. Kincaid personnel had failed to properly brace the wall. Kincaid's foreman conceded it was overlooked. At the time of the incident, Kincaid was not carrying workers' compensation insurance.[1]

---

[1] The parties do not dispute the following facts as to Kincaid's workers' compensation coverage: "Starting on December 16, 1998, [Kincaid] had workers' compensation insurance until January 2, 2001, when the policy was canceled by State Compensation Insurance Fund

Bell sued Agee, Kincaid, and Kincaid's principal Jeffrey Kincaid, asserting causes of action for negligence, "special risk" and premises liability. Bell alleged Agee, alone and as a joint venturer with Kincaid, had a contractual and legal duty to exercise reasonable care for the worksite safety of employees, and breached that duty by failing to exercise control over safety conditions at the site and oversee workers' safety. Bell further alleged Agee should have recognized that the work of framing was likely to create a special risk of bodily harm to others unless special precautions were taken. He alleged Agee failed to guard or warn against a dangerous condition at the site. Bell later filed a claim for workers' compensation benefits with California's Uninsured Employers Fund.

■ Agee moved alternatively for summary judgment and summary adjudication. It argued Bell's negligence and premises liability causes of action were barred under the California Supreme Court's decision in *Hooker v. Dept. of Transportation* (2002) 27 Cal.4th 198 [115 Cal.Rptr.2d 853, 38 P.3d 1081] (*Hooker*), because Agee did nothing to affirmatively contribute to Bell's injuries. In connection with the motion, the parties did not dispute that Agee never directed any of the operative details of Kincaid's work, and Agee did not contribute in any way to Bell's injury. Relying on *Lopez v. C.G.M. Development* (2002) 101 Cal.App.4th 430 [124 Cal.Rptr.2d 227] (*Lopez*), Agee argued its liability was not increased or affected by Kincaid's failure to maintain workers' compensation insurance. Agee argued summary adjudication of Bell's remaining causes of action asserting peculiar risk theories was proper under *Privette, supra,* 5 Cal.4th 689, *Toland v. Sunland Housing Group, Inc.* (1998) 18 Cal.4th 253 [74 Cal.Rptr.2d 878, 955 P.2d 504] (*Toland*), and *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235 [108 Cal.Rptr.2d 617, 25 P.3d 1096] (*Camargo*), which preclude employees from suing the hirer of their employer under various theories of the peculiar risk doctrine.

In a tentative ruling, the superior court granted summary judgment. It ruled Agee demonstrated there was no triable issue of material fact as to Bell's negligence and premises liability causes of action in that Agee did not affirmatively contribute to Bell's injuries. The court agreed Agee's liability was not impacted by Kincaid's failure to hold workers' compensation insurance at the time of the incident. The court similarly ruled there was no triable issue of material fact as to Bell's other causes of action for joint venturer liability and special risk on the ground that Agee as a general contractor could not be sued under those theories as a matter of law. After

(SCIF). [Kincaid] obtained a new policy on October 24, 2001, which was valid until April 11, 2002 (11 days prior to Bell's injury), when the policy was again canceled by SCIF. [Kincaid] obtained a third workers' compensation insurance policy on May 18, 2002[,] which is still presently in effect." The record shows, and the parties do not dispute, that Kincaid and Agee entered into their subcontract on April 3, 2002.

considering arguments on the matter, the court confirmed its tentative ruling and entered judgment for Agee.

Kincaid thereafter filed a petition under chapter 7 of the Bankruptcy Act in federal bankruptcy court.[2]

## DISCUSSION

### I. *Standard of Review*

On appeal from a summary judgment, "[w]e review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion . . . and the uncontradicted inferences the evidence reasonably supports." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) The evidence must be viewed in favor of the plaintiff as the losing party, construing the submissions of the plaintiff liberally and those of the defendant strictly. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768 [107 Cal.Rptr.2d 617, 23 P.3d 1143].)

In this appeal Bell raises no issue as to peculiar risk liability under the theories of retained control and affirmative contribution set out in *Hooker, supra,* 27 Cal.4th 198.[3] Bell's challenge is limited to a single question of law

---

[2] At Bell's unopposed request, we have taken judicial notice of the fact of Kincaid's filing via the Notice of Automatic Stay and Notice of Chapter 7 Bankruptcy Case from Kincaid's bankruptcy proceeding. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).) Bell has also submitted certain documents associated with his application for workers' compensation benefits and requested that we judicially notice (1) the case history of his Workers' Compensation Appeals Board (WCAB) claim and (2) his application for benefits and "special notice of lawsuit" filed with the WCAB. In support of his request, Bell argues "when and how [he] initiated his claim for workers' compensation benefits as well as the status of that proceeding are of 'substantial consequence' to arguments made" by the parties, and these events are "pertinent" to the appellate arguments. "Although a court may judicially notice a variety of matters . . . , only relevant material may be noticed." (*Mangini v. R. J. Reynolds Tobacco Co.* (1994) 7 Cal.4th 1057, 1063 [31 Cal.Rptr.2d 358, 875 P.2d 73].) We take judicial notice of the fact of Bell's filing for workers' compensation benefits as evidenced by his petition dated June of 2002. However as to the remaining documents and facts, other than Bell's conclusions we are without any meaningful explanation as to why these items or facts are relevant, and we therefore decline to take judicial notice of the remaining documents (computer records of his WCAB case history, health insurance claim forms, and medical records).

[3] In *Hooker,* the court held "a hirer of an independent contractor is not liable to an employee of the contractor merely because the hirer retained control over safety conditions at a worksite, but that a hirer is liable to an employee of a contractor insofar as a hirer's exercise of retained control *affirmatively contributed* to the employee's injuries." (*Hooker, supra,* 27 Cal.4th at p. 202.) Applying fairness principles expressed in *Privette* and *Toland,* the court explained: "[B]ecause the liability of the contractor, the person primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage, it would be unfair to impose tort liability on the hirer of the contractor merely because the hirer retained the

on undisputed facts, namely, whether peculiar risk liability may be imposed on Agee notwithstanding *Privette*, because his employer Kincaid was without workers' compensation coverage at the time he sustained his injuries.

## II. *Privette*

Bell contends his causes of action against Agee should not be governed by the rule set out in *Privette* barring liability for hirers of independent contractors under the peculiar risk doctrine. He maintains the policies underlying *Privette*'s holding do not apply when the general contractor does not carry workers' compensation insurance, like Agee in this case.

In *Privette*, the California Supreme Court determined whether the peculiar risk doctrine should apply in circumstances where an independent contractor's employee who is injured on the job as a result of the contractor's negligence seeks to recover against the person who hired the contractor. In that case, an employee of a contractor hired to install a roof was burned after his employer instructed him to carry hot buckets of tar up a ladder. (*Privette*, *supra*, 5 Cal.4th at p. 692.) The employee sought workers' compensation benefits for his injuries, and also sued the property owner (who had hired the contractor) under the doctrine of peculiar risk. (*Ibid.*)

Reviewing the peculiar risk doctrine's evolution, the court observed the doctrine served as an exception to the common law rule of nonliability for a hirer of an independent contractor for the contractor's negligence in performing work, so as to ensure innocent third parties injured by the contractor's negligence would not have to depend on the contractor's solvency in order to be compensated for their injuries. (*Privette*, *supra*, 45 Cal.4th at p. 694.) Underlying the exception was the idea that it was more fair to allocate the risk of loss to the person for whose benefit the job was undertaken and that such loss spreading would promote workplace safety. (*Ibid.*) In turn, the court noted, the hirer was entitled to equitable indemnity from the independent contractor. (*Id.* at pp. 695–696.) In California, the peculiar risk doctrine had expanded to permit employees of hired contractors to obtain recovery from the nonnegligent property owner for their injuries. (*Id.* at p. 696.) Courts had not, however, addressed the validity of this expansion of the doctrine in view of the Workers' Compensation Act, under which "all employees are automatically entitled to recover benefits for injuries 'arising out of and in the course of the employment.'" (*Id.* at pp. 696–697, citing Lab. Code, §§ 3600, subd. (a), 3716.)

---

ability to exercise control over safety at the worksite. In fairness . . . the imposition of tort liability on a hirer should depend on whether the hirer *exercised* the control that was retained in a manner that *affirmatively* contributed to the injury of the contractor's employee." (*Hooker*, *supra*, 27 Cal.4th at p. 210.)

■ Resolving that question, the California Supreme Court barred the employee's recovery, finding the extension of tort liability under peculiar risk to the employees of an independent contractor hired to do dangerous work "advances no societal interest that is not already served by the workers' compensation system." (*Privette, supra,* 45 Cal.4th at p. 692.) It explained that the workers' compensation system provides the exclusive remedy for such injury: "In *S.G. Borello & Sons, Inc. v. Department of Industrial Relations* [(1989)] 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399], we articulated four distinct objectives of the [Workers' Compensation] Act: '(1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee's work injuries, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees' injuries. [Citations.]'

■ "When the conditions of compensation exist, recovery under the workers' compensation scheme 'is the exclusive remedy against an employer for injury or death of an employee.' [Citation.] The purpose of this exclusivity provision is to give efficacy to the theoretical 'compensation bargain' between the employer and employee. [Citation.] . . . [W]e described that bargain as follows: '[T]he employer assumes liability for industrial personal injury or death without regard to fault in exchange for limitations in the amount of that liability. The employee is afforded relatively swift and certain payment of benefits to cure or relieve the effects of industrial injury without having to prove fault but, in exchange, gives up the wider range of damages potentially available in tort. [Citations.]' [Citation.] The Act's exclusivity clause applies to work-related injuries regardless of fault, including those attributable to the employer's negligence or misconduct [citation] as well as the employer's failure to provide a safe workplace [citation]. But the exclusivity clause does not preclude the employee from suing anyone else whose conduct was a proximate cause of the injury. [Citations.]

■ "To encourage employers to obtain workers' compensation insurance for their employees, the [Workers' Compensation] Act's 'exclusive remedy' clause does not apply in favor of employers that fail to obtain such insurance, and consequently they are not immune from tort liability for such injuries. [Citation.] Conversely, an employer that provides compensation coverage has no further liability for workplace injuries to an employee. Therefore, if a nonnegligent third party pays damages for an employee's injuries that are attributable in whole or in part to the negligence of the employer, the [Workers' Compensation] Act's limitations on employer liability precludes the third party from obtaining equitable indemnity from the employer." (*Privette, supra,* 5 Cal.4th at pp. 697–698.)

■ The court rejected the expansive view of the peculiar risk doctrine in this context because it would unfairly subject a nonnegligent person to greater liability than the contractor who actually caused the injury, but whose tort liability is limited by workers' compensation: "When an independent contractor causes injury to the contractor's own employee, the [Workers' Compensation] Act's 'exclusive remedy' provision shields the contractor from further liability for the injury. Yet, under the expansive view of the peculiar risk doctrine that has been adopted in California and a minority of other jurisdictions, the person who hired the independent contractor can, for the same injury-causing conduct of the contractor, be held liable in a tort action for the injuries to the contractor's employee. Because this expansive view produces the anomalous result that a nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury, it has been widely criticized." (*Privette, supra,* 5 Cal.4th at p. 698.)

The court concluded that "in the case of on-the-job injury to an employee of an independent contractor, the workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk: It ensures compensation for injury by providing swift and sure compensation to employees for any workplace injury; it spreads the risk created by the performance of dangerous work to those who contract for and thus benefit from such work, by including the cost of workers' compensation insurance in the price for the contracted work; and it encourages industrial safety." (*Privette, supra,* 5 Cal.4th at p. 701.)

The court supported its conclusion with policy considerations. It observed that to permit injured employees to recover from both the workers' compensation system and the contractor's hirer would provide employees of independent contractors an unwarranted windfall, giving them an opportunity denied to other workers and also exempting those employees from the statutorily mandated limits of workers' compensation. (*Privette, supra,* 5 Cal.4th at pp. 699–700.) The court also pointed out that a significant policy justification for imposing peculiar risk liability on hirers—the hirer's ability to seek equitable indemnity from the negligent independent contractor—is absent because the exclusivity provisions of workers' compensation shields the negligent contractor from such actions. (*Id.* at p. 701.)

The California Supreme Court reaffirmed its view that the workers' compensation system provides a sufficient remedy for an injured worker in *Toland, supra,* 18 Cal.4th 253 and *Camargo, supra,* 25 Cal.4th 1235. In *Toland,* the court held *Privette* barred recovery under the peculiar risk doctrine for the hirer's liability under both sections 413 and 416 of the

Restatement Second of Torts.[4] (*Toland*, at p. 265.) *Toland* involved similar facts as in the present case: a subcontractor's employee sued the general contractor for on-the-job injuries caused when a framed wall fell upon him, and also sought workers' compensation benefits. (*Id.* at p. 257.) The employee asserted that *Privette* did not bar recovery for "direct" liability under section 413, but only for "vicarious" liability under section 416. (*Toland, supra,* 18 Cal.4th at p. 264.) The Supreme Court rejected the notion that there was a clear distinction between the two sorts of liability under peculiar risk theory. "[P]eculiar risk liability is not a traditional theory of direct liability for the risks created by one's own conduct: Liability under both sections is in essence 'vicarious' or 'derivative' in the sense that it derives from the 'act or omission' of the hired contractor, because it is the hired contractor who has caused the injury by failing to use reasonable care in performing the work." (*Id.* at p. 265.) The court held that, contrary to the plaintiff's assertion, *Privette* bars employees of a hired contractor who are injured by the contractor's negligence from seeking recovery against the hiring person, irrespective of whether recovery was sought under the theory of peculiar risk set forth in Restatement Second of Torts section 416 or section 413: "In either situation, it would be unfair to impose liability on the hiring person when the liability of the contractor, the one primarily responsible for the worker's on-the-job injuries, is limited to providing workers' compensation coverage." (*Toland,* 18 Cal.4th at p. 267.) In *Camargo,* the court extended *Privette* to bar recovery for negligent hiring under Restatement Second of Torts section 411 under the same rationale. (*Camargo, supra,* 25 Cal.4th at pp. 1243–1244.)

### III. *Bell's Contentions*

In a series of arguments based on *Privette*'s underlying policies and objectives, Bell contends *Privette* should not bar his claims against Agee. Specifically, he maintains it is not inequitable to shift the financial burden of his injuries to Agee because his uninsured employer, Kincaid, is not immune from tort liability and Agee is not prevented from seeking equitable indemnity from Kincaid, thus eliminating *Privette*'s concern over imposing excessive liability on the nonnegligent hirer. He contends that in cases where a subcontractor is uninsured by workers' compensation, the hirer/general contractor will not bear inequitable costs because the subcontractor's bid price is

---

[4] "Under section 413, a person who hires an independent contractor to do inherently dangerous work, but who fails to provide in the contract or in some other manner that special precautions be taken to avert the peculiar risks of that work, can be liable if the contractor's negligent performance of the work causes injury to others. Under section 416, even if the hiring person has provided for special precautions 'in the contract or otherwise,' the hiring person can nevertheless be liable if the contractor fails 'to exercise reasonable care to take such precautions' and the contractor's performance of the work causes injury to others." (*Toland, supra,* 18 Cal.4th at pp. 256–257.)

"necessarily discounted" by the absence of such coverage. He further contends the injured worker receives no compensatory windfall because under the statutory scheme, workers' compensation benefits are offset from any tort recovery. Bell asserts that imposing peculiar risk liability to general contractors like Agee in these circumstances ensures that the cost of compensation will be spread to the hirer benefiting from the contracted work, and will also serve to promote safe construction practices because hirers would insist on retaining properly insured independent contractors.

Agee counters that such arguments were addressed and rejected by the court in *Lopez, supra,* 101 Cal.App.4th 430. In *Lopez,* a property owner desiring to develop its property hired a general contractor, who in turn retained a subcontractor to frame the roof. (*Id.* at p. 434.) Although the subcontractor was licensed, it did not have workers' compensation insurance. (*Id.* at p. 435.) When Lopez, one of the subcontractor's employees, was injured on the job, he sued the owner for negligence, alleging it had maintained dangerous conditions at the jobsite and had not provided him with safety equipment. (*Ibid.*) On appeal from summary judgment, Lopez argued he could recover damages from the owner based on the peculiar risk doctrine in part on the theory that the rationales of *Privette* and *Toland* did not apply because the subcontractor did not have workers' compensation coverage. (*Lopez, supra,* at pp. 442–443.)

■ The court rejected Lopez's attempt to avoid *Privette* and *Toland* based on the subcontractor's uninsured status. Describing the system of workers' compensation, it stated: " 'In the most explicit terms, [the Workers' Compensation Act] declares the exclusive character of the employer's [workers'] compensation liability in lieu of any *other* liability to *any* person. [The exclusivity provisions] form a complementary, unmistakable declaration of legislative policy that the cost of industrial injury, at the scale fixed by the compensation law, shall be borne by the employing enterprise.' [Citation.] And if a third party tortfeasor is involved, an injured employee can pursue a civil action as to that party. [Citations.]

■ "Because [the subcontractor] was not insured for workers' compensation, the exclusivity provisions do not protect it from suit. [Citation.] Lopez can file a civil action against [the subcontractor] seeking tort relief. [Citation.] Of course, in *Privette, supra,* 5 Cal.4th 689, the court held that 'the rule of workers' compensation exclusivity, which shields an independent contractor who pays workers' compensation insurance premiums from further liability to its employees for on-the-job injuries, should equally protect the property owner who, in hiring the contractor, is indirectly paying for the cost of such coverage, which the contractor presumably has calculated into the contract

price.' [Citation.] The same rationale was applied in *Toland, supra,* 18 Cal.4th at pages 261 and 266." (*Lopez, supra,* 101 Cal.App.4th at pp. 443–444.)

The *Lopez* court rejected the plaintiff's arguments that under the *Privette/Toland* analysis, the owner and subcontractor should be treated alike when the subcontractor is uninsured—i.e., both subject to suit—and that the owner should not benefit from workers' compensation exclusivity because its contract price did not include the cost of such insurance. It said, "*Privette* recognized that 'the "principal" who hires an independent contractor should be subject to *no greater liability* "than its [independent contractor] agent," . . . .' [Citation.] Thus, *Privette* did not foreclose the possibility that the principal could be subject to the same, less, or no liability compared to the independent contractor." (*Lopez, supra,* 101 Cal.App.4th at p. 444.) The court reasoned that equity and public policy, key principles underlying *Privette,* would not be served by penalizing the owner for the subcontractor's failure to obtain workers' compensation coverage, a misdemeanor. (*Lopez,* at pp. 444–445.)

The *Lopez* court further held that the owner did not have a duty to ascertain whether the subcontractor was properly insured. " 'The fundamental policy underlying the workers' compensation laws is that those hiring others to perform services should bear the risk of injuries incurred in the undertakings. When the person seeks to hire the services through a licensed independent contractor, it is reasonable to anticipate that the independent contractor will insure against the risk and that the cost of the insurance will be passed on as part of the price of the contract. Thus it is reasonable to exonerate the hirer of the independent contractor.' " (*Lopez, supra,* 101 Cal.App.4th at p. 445, italics omitted, quoting *State Compensation Ins. Fund v. Workers' Comp. Appeals Bd.* (1985) 40 Cal.3d 5, 13 [219 Cal.Rptr. 13, 706 P.2d 1146].)

Finally, the court observed Lopez was indeed covered by workers' compensation through the state's Uninsured Employers Fund (the Fund), which was "created to ensure that workers employed by illegally uninsured employers are not deprived of workers' compensation benefits." (*Lopez, supra,* 101 Cal.App.4th at p. 445.) It explained that although the Fund's obligation is largely coextensive with that of the uninsured employer, once it pays the entire award the Fund " 'becomes subrogated to the employee's claim and may proceed directly against the uninsured employer to recover the entire amount of the award from him.' " (*Id.* at p. 445, quoting *Rinaldi v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 217, 224–225 [244 Cal.Rptr. 637].) The court concluded: "In sum, the peculiar risk doctrine, as applied in *Privette* and *Toland,* does not permit Lopez to maintain this action against [the owner.]" (*Lopez,* at p. 445.)

## IV. *Analysis*

While Bell frames his arguments in broad terms, we limit our holding to the particular facts of this case. Doing so, we hold that the ultimate conclusion reached by the *Lopez* court is sound, that it is supported by the court's holdings in both *Privette* and *Toland*, and that Agee is not subject to peculiar risk liability under these circumstances.

As in *Lopez*, Bell is not prevented from seeking compensation from the Fund, and indeed he has commenced proceedings to do so. Since the fundamental social policy of providing compensation to an injured employee is achieved by the workers' compensation system, there is no justification for imposing vicarious liability on Agee. Bell's access to such benefits eliminates the need to impose liability "to ensure that innocent third parties injured by the negligence of an independent contractor hired by a landowner to do inherently dangerous work on the land would not have to depend on the contractor's solvency in order to receive compensation for the injuries." (*Privette*, *supra*, 5 Cal.4th at p. 694.)

We are persuaded the California Supreme Court in *Privette* intended that its ruling would extend to bar peculiar risk liability in situations where an injured employee's employer is uninsured and the employee receives benefits through the Fund. *Privette* determined it was unfair to hold nonnegligent hirers of contractors vicariously liable for the injuries to employees of negligent contractors because such employees have access to compensation under the Workers' Compensation Act, *regardless of whether their employer carried insurance.* The court said: "Under the Workers' Compensation Act . . . , all employees are automatically entitled to recover benefits for injuries 'arising out of and in the course of the employment.' " (*Privette*, *supra*, 5 Cal.4th at pp. 696–697.) Significantly, in support of this statement, the court cited Labor Code section 3716, noting it "set[s] up an uninsured employers fund to provide benefits for employees not covered by workers' compensation insurance[.]" (*Privette*, 5 Cal.4th at p. 697.) Thus, when an employee is entitled to receive benefits under the Workers' Compensation Act whether from insurance or from the Fund, i.e., the "workers' compensation system of recovery" (*Id.*, at p. 701) the rationale for imposing the peculiar risk doctrine does not apply.

*Toland* also acknowledged this principle, emphasizing *Privette* was premised on the employee's ability to recover under the workers' compensation system *regardless of the contractor's solvency*: "*Privette* pointed out that the policy reasons that support imposition of peculiar risk liability on the hiring person for injuries to neighboring property owners or innocent by-standers are absent when the person injured by the independent contractor's

negligence is an employee of the contractor. [Citation.] The neighboring landowner or innocent bystander may have no other source of compensation for injuries resulting from the contractor's negligence in doing the inherently dangerous work. In contrast, an employee of the negligent contractor can, for workplace injury caused by the contractor's negligence, recover under the workers' compensation system *regardless of the solvency of the contractor.* (See Lab. Code, § 3716 [providing workers' compensation benefits to workers employed by uninsured employers].)" (*Toland, supra,* 18 Cal.4th at p. 261, italics added.) Under the reasoning of both *Privette* and *Toland,* Kincaid's uninsured status for purposes of workers' compensation does not impact Agee's liability.

Moreover, we note *Privette* did not give undue weight to the hirer's indemnity rights against the contractor as a rationale for extending peculiar risk to the hirer for injuries to the contractor's employees. (*Privette, supra,* 5 Cal.4th at p. 701 ["The availability of equitable indemnity, as mentioned earlier, is but one of several policy reasons that generally support the imposition of peculiar risk liability. . . . [I]n the case of on-the-job injury to an employee of an independent contractor, the workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk. . . ."].) Further, just as Agee has the right to seek indemnity, Bell has the right to seek recovery from Kincaid, which was another reason expressed by the *Lopez* court in support of refusal to extend peculiar risk liability under these circumstances.

Bell's other policy arguments are unpersuasive. We reject the notion that Agee would not unfairly bear costs should we subject it to peculiar risk liability because its bid price was "necessarily discounted" by the absence of workers' compensation coverage. On this record Bell's factual premise is without support. The parties do not dispute that Kincaid's coverage was in effect as of the date it entered into the subcontract with Agee (see fn. 1, *ante*). There is no evidence, and no reasonable inference can be drawn under these facts, that Agee's contract price was in any way affected or discounted by Kincaid's insurance status. Similarly, in view of these facts, there is no support for Bell's policy-based argument that imposition of peculiar risk liability on Agee would ensure the promotion of safe construction practices. Indeed, Kincaid presented Agee with a proof of insurance form indicating Kincaid had a valid and effective workers' compensation insurance policy.[5]

Kincaid's pending bankruptcy proceeding does not change our conclusion. Bell's only argument related to Kincaid's bankruptcy is to distinguish *Lopez*;

---

[5] Agee presented this document to the court in its reply papers via the declaration of its counsel, and also pointed this fact out at the hearing on its motion without objection from Bell's counsel. We express no opinion on the outcome in cases where the hirer knowingly retains an independent contractor that does not carry workers' compensation insurance.

he argues *Lopez* does not involve an insolvent contractor and its conclusion as to an injured employee's access to the Fund is inapplicable here because Kincaid's bankruptcy has "indefinitely precluded access to . . . benefits" from the Fund. We are not persuaded. Though we need not address Bell's unsupported assertion (*Dixon v. Superior Court* (1994) 30 Cal.App.4th 733, 746, fn. 12 [36 Cal.Rptr.2d 687]), we have found one authority suggesting Bell controls his own ability to recover from the Fund in light of Kincaid's bankruptcy filing, and may do so if he follows all the statutory conditions for such recovery. (*Ortiz v. Workers' Comp. Appeals Bd.* (1992) 4 Cal.App.4th 392.) In *Ortiz*, the court held the applicant was prevented from seeking benefits from the Fund following his employer's discharge in bankruptcy only because the applicant did not file a proof of claim in the employer's bankruptcy proceeding or make a proper demand on his employer for payment, both prerequisites to the Fund's liability for payment. (*Id.* at pp. 398–399.) In reaching this holding, the court said, "the [Fund is] a 'purely statutory creature' whose liability depends on the strict compliance with statutory conditions . . . . In order to seek enforcement against the [Fund] of any award against [the employer], applicant was required to strictly meet the statutory conditions." (*Id.* at p. 398.)

■ Because *Lopez* is not the sole basis for our holding, we need only briefly address Bell's additional attempts to distinguish that case. We reject Bell's argument that equity supports exposing Agee to tort liability because, unlike *Lopez*, which involved a property owner, Agee was the general contractor in charge of the project that, according to Bell, did nothing to guard against the risk of improperly braced walls. Agee's failure to take action is irrelevant absent evidence that Agee affirmatively contributed to Bell's injuries in some manner. (*Hooker, supra*, 27 Cal.4th at p. 202.) Nor has Bell cited to authority that justifies treating a property owner differently than a general contractor. Indeed, the court in *Toland* made it clear that its policy-based holding extended equally to "a general contractor, a landowner, or any other hirer of an independent contractor . . . ." (*Toland, supra*, 18 Cal.4th at pp. 269–270.) As Agee points out, in these situations the California Supreme Court has consistently referred to the person employing the subcontractor as the "hirer" or "hiring person," suggesting there is no legal distinction in this context. (*Camargo, supra*, 25 Cal.4th at pp. 1238–1239; *Hooker, supra*, 27 Cal.4th at pp. 200–201, 211–212; *McKown v. Wal-Mart Stores, Inc.* (2002) 27 Cal.4th 219, 222 [115 Cal.Rptr.2d 868, 38 P.3d 1094].)

For the foregoing reasons, we conclude Bell is barred from recovering from Agee under the peculiar risk doctrine as applied in *Privette* and *Toland*. The court properly granted summary judgment in Agee's favor.

## DISPOSITION

The judgment is affirmed.

Nares, Acting P. J., and Irion, J., concurred.

Appellant's petition for review by the Supreme Court was denied March 16, 2005. Brown, J., did not participate therein.