[No. A119733. First Dist., Div. One. Aug. 28, 2008.]

STEPHEN SALINAS, Plaintiff and Appellant, v.
PAOLO MARTIN, Defendant and Respondent.

408

## COUNSEL

Robert Stevens Condie for Plaintiff and Appellant.

Valerian, Patterson & Stratman, Scott C. Stratman; Hayes, Davis, Bonino, Ellingson, McLay & Scott, Mark G. Bonino and Phuong N. Fingerman for Defendant and Respondent.

## OPINION

**SWAGER, J.**—The trial court granted respondent's motion for summary judgment upon a finding that respondent owed no duty of care to prevent an attack of appellant by a pit bull present on respondent's property with his express consent. We conclude that respondent owed a duty of care to appellant and reverse the judgment.

### STATEMENT OF FACTS

Respondent was the owner of a residence located on McLaughlin Street in Richmond. In 2005, he embarked upon a remodeling project at the residence that included construction of a new foundation. Respondent hired Burle Southard to act as general contractor for the project. Southard, in turn, hired appellant as an employee to work on the construction project under his supervision for a period of three to four months. With respondent's approval, appellant and Southard stored equipment and materials in the backyard and garage of the residence. Appellant was given permission by respondent to enter the yard "at any time" to retrieve equipment or materials he stored there.

Respondent also hired two men, Armand and Greg Sanchez, to perform "weeding and gardening" work on the premises. The Sanchezes had two dogs, a pit bull terrier and a smaller pit bull-Labrador mix. Respondent

agreed that the Sanchezes could keep their two dogs loose in the fenced backyard and in a van they kept on the property. According to respondent's declaration, he did not see or hear the dogs attack, bite or appear aggressive with anyone; they seemed "tame and friendly" to him.

Southard expressed a different view of the dogs. He declared that he "saw a ferocious looking pit bull dog" in the Sanchezes' "very dilapidated looking van" in June or July of 2005. Southard confronted respondent about the dog. Respondent explained that the "van had been broken into in the past, and the dog was there to guard the van." Southard communicated his fear and view to respondent that "he should certainly not have this pit bull" which had been trained as a " 'guard dog' around this job site." He told respondent, " 'that's a pit bull,' meaning that the dog was dangerous." Southard thought respondent understood the concern he conveyed that "the dog would attack someone."

On August 1, 2005, appellant called Southard to report that he needed to retrieve "wood planks for scaffolding" that were stored in respondent's yard. In accordance with the consent previously given by respondent, Southard advised appellant to "go ahead and pick up what he needed." The same day, respondent had specifically given Armand Sanchez permission to let the dogs "roam in the backyard." Respondent left the house before appellant arrived and was gone for four or five hours. He was not advised that appellant "intended to visit" the residence that day. If respondent had known appellant planned to enter the yard, he would have "warned him about the pit bull."

Appellant had never seen the dogs at the residence before, so he entered the backyard through a 12-inch gap in a cyclone fence around the house. Once appellant was about 10 to 12 feet into the yard at the corner of the foundation, the smaller mixed-breed dog growled at him, then the pit bull attacked him. Appellant escaped through the gap in the fence, but the pit bull followed into the driveway and continued to repeatedly bite him until he managed to jump onto respondent's car.

The trial court determined that respondent had "no duty of care" to appellant to prevent the dog attack. The court found that property owners "must have actual knowledge of the vicious nature or dangerous propensities of another's dog" to incur liability for injuries incurred on their property, and appellant "has not raised a triable issue of material fact as to the lack of [respondent's] knowledge about the dangerous tendencies of the dog." The summary judgment motion of respondent was granted, and judgment was entered in his favor. This appeal followed.

## DISCUSSION

Appellant argues that the trial court erred by granting defendant's motion for summary judgment and dismissing his negligence action. He asserts that the trial court committed several errors in resolving the summary judgment motion. First, he complains that the court applied "the wrong standard" of duty analysis that requires a "residential landlord" to "have actual knowledge of the vicious nature or dangerous propensities of another's dog" to incur liability, whereas "this is not a landlord/tenant case." Appellant also claims that the evidence adduced by defendant failed to meet his burden of proving he "did not actually know the dogs were dangerous," even if we follow the erroneous "residential landlord/tenant's pet" standard. Appellant adds that his evidence in opposition to the motion, particularly Southard's declaration, established a "triable issue of fact" as to respondent's knowledge of the danger posed by the pit bull guard dog.

### I. *The Summary Judgment Standards.*

We adhere to established rules in reviewing the trial court's ruling on respondent's summary judgment motion. "A defendant's motion for summary judgment should be granted if no triable issue exists as to any material fact and the defendant is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) The burden of persuasion remains with the party moving for summary judgment. [Citation.] When the defendant moves for summary judgment, in those circumstances in which the plaintiff would have the burden of proof by a preponderance of the evidence, the defendant must present evidence that would preclude a reasonable trier of fact from finding that it was more likely than not that the material fact was true [citation], or the defendant must establish that an element of the claim cannot be established, by presenting evidence that the plaintiff 'does not possess and cannot reasonably obtain, needed evidence.' [Citation.]" (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].) " 'A defendant or cross-defendant has met his or her burden of showing that a cause of action has no merit if that party has shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action. Once the defendant or cross-defendant has met that burden, the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' (Code Civ. Proc., § 437c, subd. (p)(2).)" (*Lewis v. Chevron U.S.A., Inc.* (2004) 119 Cal.App.4th 690, 693 [14 Cal.Rptr.3d 636].)

■ Appellant's negligence action "requires a showing that the defendant owed the plaintiff a legal duty, that the defendant breached that duty, and that the breach was a proximate or legal cause of injuries suffered by the plaintiff." (*Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1532 [53 Cal.Rptr.3d 700].) Respondent's summary judgment motion challenged the proof that he owed a legal duty of care to appellant, which is a necessary element of causes of action for negligence and premises liability. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207]; *Chee v. Amanda Goldt Property Management* (2006) 143 Cal.App.4th 1360, 1369 [50 Cal.Rptr.3d 40].) To obtain a summary judgment a defendant may conclusively negate an essential element of plaintiff's action, but is not required to do so. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Castillo v. Barrera* (2007) 146 Cal.App.4th 1317, 1323 [53 Cal.Rptr.3d 494].) "Summary judgment in favor of the defendant will be upheld when the evidentiary submissions conclusively negate a necessary element of the plaintiff's cause of action or show that under no hypothesis is there a material issue of fact requiring the process of a trial." (*Biscotti v. Yuba City Unified School Dist.* (2007) 158 Cal.App.4th 554, 557–558 [69 Cal.Rptr.3d 825].)

"On appeal from a summary judgment, '[w]e review the trial court's decision de novo, considering all of the evidence the parties offered in connection with the motion . . . and the uncontradicted inferences the evidence reasonably supports.' [Citation.] The evidence must be viewed in favor of the plaintiff as the losing party, construing the submissions of the plaintiff liberally and those of the defendant strictly." (*Bell v. Greg Agee Construction, Inc.* (2004) 125 Cal.App.4th 453, 459 [23 Cal.Rptr.3d 33].)

## II. *Respondent's Duty of Care as a Landowner.*

■ Our inquiry proceeds to the nature and extent of respondent's legal duty of care as landowner for the injuries incurred on his property by appellant. " 'Generally, one owes a duty of ordinary care not to cause an unreasonable risk of harm to others. . . .' [Citation.]" (*Padilla v. Rodas* (2008) 160 Cal.App.4th 742, 747 [73 Cal.Rptr.3d 114].) "Civil Code section 1714 sets forth the general duty of a property owner toward others: 'Everyone is responsible, not only for the result of his or her willful acts, but also for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.' ■ The application of this provision entails an inquiry as to 'whether in the management of his property he has acted as a reasonable [person] in view of the probability of injury to others . . . .' [Citations.]" (*Laico v. Chevron U.S.A., Inc.* (2004) 123 Cal.App.4th 649, 659 [20

Cal.Rptr.3d 307].) A landowner " ' "has an *affirmative duty* to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must *inspect* them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous condition, he is liable." ' [Citation.]" (*Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128, 1134 [32 Cal.Rptr.2d 755].)

■ "An exception to the statutory rule of liability for failure to use ordinary care in the management of one's property requires clear support in public policy." (*Laico v. Chevron U.S.A., Inc., supra,* 123 Cal.App.4th 649, 659–660.) " 'In the case of a landowner's liability for injuries to persons on the property, the determination of whether a duty exists, "involves the balancing of a number of considerations; the major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and the consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." [Citations.]' [Citation.]" (*Rinehart v. Boys & Girls Club of Chula Vista* (2005) 133 Cal.App.4th 419, 430 [34 Cal.Rptr.3d 677]; see also *Padilla v. Rodas, supra,* 160 Cal.App.4th 742, 747.) "Foreseeability and the extent of the burden to the defendant are ordinarily the crucial considerations, but in a given case one or more of the other *Rowland* factors may be determinative of the duty analysis." (*Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1213 [63 Cal.Rptr.3d 99, 162 P.3d 610].) The existence and scope of a defendant's duty is a question of law for the court's resolution. (*Shin v. Ahn* (2007) 42 Cal.4th 482, 488 [64 Cal.Rptr.3d 803, 165 P.3d 581]; *Padilla v. Rodas, supra,* at p. 747.)

■ As appellant acknowledges, where a landlord has relinquished control of property to a tenant, a "bright line" rule has developed to moderate the landlord's duty of care owed to a third party injured on the property as compared with the tenant who enjoys possession and control. " 'Because a landlord has relinquished possessory interest in the land, his or her duty of care to third parties injured on the land is attenuated as compared with the tenant who enjoys possession and control. Thus, before liability may be thrust on a landlord for a third party's injury due to a dangerous condition on the land, the plaintiff must show that the landlord had actual knowledge of the dangerous condition in question, plus the right and ability to cure the condition.' [¶] Limiting a landlord's obligations releases it from needing to engage in potentially intrusive oversight of the property, thus permitting the tenant to enjoy its tenancy unmolested." (*Stone v. Center Trust Retail Properties, Inc.* (2008) 163 Cal.App.4th 608, 612 [77 Cal.Rptr.3d 556], citing *Mata v. Mata* (2003) 105 Cal.App.4th 1121, 1131–1132 [130 Cal.Rptr.2d 141].)

 Consistent with this rule, "a landlord owes a duty of care to his tenant's invitees to prevent injury from the tenant's vicious dog when the landlord has 'actual knowledge' of the dog's vicious nature in time to protect against the dangerous condition on his property." (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 152 [10 Cal.Rptr.3d 18].) Conversely, "it is well established that a landlord does not owe a duty of care to protect a third party from his or her tenant's dog unless the landlord has actual knowledge of the dog's dangerous propensities, and the ability to control or prevent the harm." (*Chee v. Amanda Goldt Property Management, supra*, 143 Cal.App.4th 1360, 1369; see also *Yuzon, supra*, at p. 163; *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1838 [41 Cal.Rptr.2d 192]; *Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 507 [118 Cal.Rptr. 741] (*Uccello*).) " ' "[A] landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise." ' (*Yuzon, supra*, at p. 163, quoting *Uccello, supra*, at p. 514; see also *Donchin, supra*, at p. 1838 ['a landlord who does not have actual knowledge of a tenant's dog's vicious nature cannot be held liable when the dog attacks a third person'].)" (*Chee, supra*, at pp. 1369–1370; see also *Martinez v. Bank of America* (2000) 82 Cal.App.4th 883, 892 [98 Cal.Rptr.2d 576].)

This is not a case, however, in which the plaintiff has asserted passive neglect on the part of a landlord for failure to inspect or take security measures to protect third parties from a dangerous condition on a tenant's property. The present action is distinguishable on many decisive levels. First and foremost, respondent was not an absentee landlord with limited access to the property. He did not surrender his possessory interest in the property in any way; he continued to control the premises at least intermittently while the construction project proceeded. The dog owners were not respondent's tenants who had sole possessory rights associated with the property, but rather temporary invitees who performed landscaping services. And unlike tenants, they were neither vested with exclusive possession of the property nor were entitled to keep their dogs there without express permission granted by respondent. Thus, the essential foundation that underlies the carefully circumscribed duty imposed upon landlords—the restraint upon the landlord's right to engage in intrusive oversight or control of the tenant's use of the property—is absent here.

 The court in *Uccello, supra*, 44 Cal.App.3d 504, 512, first pronounced the rule that "a landlord who has knowledge of a dangerous animal

should be held to owe a duty of care only when he has the right to prevent the presence of the animal on the premises."[1] The court also recognized an important exception where "either at or after the time possession is given to the tenant the landlord retains or acquires a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury. In these situations, the law imposes on the landlord a duty to use ordinary care to eliminate the condition with resulting liability for injuries caused by his failure so to act." (44 Cal.App.3d 504, 511.) The court explained: "To permit a landlord in such a situation to sit idly by in the face of the known danger to others must be deemed to be socially and legally unacceptable." (*Id.* at p. 512.)

" '*The crucial element is control.*' [Citation.]" (*Alcaraz v. Vece* (1997) 14 Cal.4th 1149, 1158 [60 Cal.Rptr.2d 448, 929 P.2d 1239].) "[W]e have placed major importance on the existence of possession and control as a basis for tortious liability for conditions on the land." (*Preston v. Goldman* (1986) 42 Cal.3d 108, 119 [227 Cal.Rptr. 817, 720 P.2d 476], citing *Sprecher v. Adamson Companies* (1981) 30 Cal.3d 358, 368 [178 Cal.Rptr. 783, 636 P.2d 1121].) "In general, courts have imposed a duty to prevent the harm caused by a third party's animal when a defendant possesses the means to control the animal or the relevant property and can take steps to prevent the harm." (*Cody F. v. Falletti* (2001) 92 Cal.App.4th 1232, 1236 [112 Cal.Rptr.2d 593].)

Given respondent's continued presence on the property, he not only had much greater awareness of events that occurred there, but he also did not relinquish the right or compromise his ability to prevent foreseeable harm on the premises. Further, appellant does not rely merely on respondent's failure to conduct a reasonable inspection of the property. Nor does this case present the situation of a landlord with no knowledge of the dog aside from a rental agreement which provided that a pet could be kept on the premises. (Cf. *Portillo v. Aiassa, supra*, 27 Cal.App.4th 1128, 1137; *Lundy v. California Realty* (1985) 170 Cal.App.3d 813, 821 [216 Cal.Rptr. 575].) Appellant relies on an *affirmative act* of negligence by respondent that caused his harm: that when asked, respondent gave explicit verbal authority for the Sanchezes' "guard dog[s]" to run loose on the property.

Therefore, the cases that decline to impose a duty of care unless a landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, are not dispositive. Under the facts presented in the case before us, we do not merely examine the evidence for proof of respondent's

---

[1] The court added: "Simply put, a landlord should not be held liable for injuries from conditions over which he has no control." (*Uccello, supra*, 44 Cal.App.3d 504, 512.)

actual knowledge of the vicious nature of the dogs and his ability to prevent the attack, as we would if he was a residential landlord. (*Portillo v. Aiassa, supra*, 27 Cal.App.4th 1128, 1134.) Instead, we must examine the totality of the factors "set forth in *Rowland v. Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561]," that are pertinent to determination of the scope of respondent's duty. (*Morris v. De La Torre* (2005) 36 Cal.4th 260, 276 [30 Cal.Rptr.3d 173, 113 P.3d 1182]; see also *Castaneda v. Olsher, supra*, 41 Cal.4th 1205, 1213.)

■ First, we consider the foreseeability of the risk. "Foreseeability is a 'crucial factor' in determining not only the existence of the landowner's legal duty, but its 'scope.' [Citation.]" (*Barber v. Chang* (2007) 151 Cal.App.4th 1456, 1464 [60 Cal.Rptr.3d 760], fn. omitted; see also *Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 237 [30 Cal.Rptr.3d 145, 113 P.3d 1159].) "[T]he scope of the duty is determined in part by balancing the foreseeability of the harm against the burden of the duty to be imposed. [Citation.] ' "[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. [Citation.] On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required." [Citation.]' [Citation.]" (*Ann M. v. Pacific Plaza Shopping Center, supra*, 6 Cal.4th 666, 678–679.)

■ We observe that while respondent had no knowledge of prior specific incidents of violence or aggressiveness by the dogs, the evidence demonstrates that he must be charged with awareness of the risk. According to Southard's declaration, construed liberally as it must be, he observed the dogs and related his perception to respondent that the pit bull was "ferocious looking" and "dangerous."[2] When respondent told Southard that the dog was present to "guard" the van on the property, Southard communicated his concern that the pit bull should not be loose on the jobsite for fear that an attack on someone may result. Respondent was also cognizant that he had given permission to at least Southard and appellant to visit the property freely and unannounced to obtain tools, equipment or materials. The residence was under construction, so the regular appearance in the yard of workers or others

---

[2] In a prior order we took judicial notice of materials submitted by appellant without objection from respondent in the nature of various ordinances enacted to protect people from "pit bull dogs," and studies which indicate the high incidence of fatal attacks upon humans by "pit-bull type dogs" as compared to other dog breeds. Since nothing in the record proves respondent's access to that information, we decline to consider it for the purpose of determining if he owed a duty to protect appellant from the Sanchezes' pit bull. Instead, we rely on the evidence presented in Southard's declaration that respondent had been specifically advised the dog was a pit bull, appeared "ferocious," and should not be present unrestrained on the jobsite.

associated with the remodeling project was expected. In short, the risk of harm was eminently foreseeable with the exercise of reasonable care. It is reasonably foreseeable that a "guard dog" kept in an area open to others may injure someone. (*Portillo v. Aiassa, supra*, 27 Cal.App.4th 1128, 1135.)

Second, respondent had the unfettered ability to prevent the dangerous condition on the property. He retained complete possession and control of the property, so he not only had the opportunity to inspect the premises regularly without restriction, but the dog owners had no right to keep the dogs there without his express consent. Failure to eliminate the dangerous condition was not due to respondent's inability to restrain or remove dogs from the premises. He essentially participated in creation of the dangerous condition of the property by authorizing or permitting the dogs to run loose in the yard. (Cf. *Kalis v. Shattuck* (1886) 69 Cal. 593, 597 [11 P. 346]; *Chee v. Amanda Goldt Property Management, supra*, 143 Cal.App.4th 1360, 1374.) Hence, a measure of "moral blame" must be attributed to respondent for failure to avert the harm that ensued; "he cannot be permitted to knowingly stand aside where it is shown that he has the power to remove the animal from the premises without incurring a liability for his failure to act." (*Uccello, supra*, 44 Cal.App.3d 504, 514.)

Further, the extent of the burden imposed on respondent to exercise due care was minimal. As we have emphasized, unlike a residential landlord respondent was not required to encroach upon his tenant's possession and enjoyment of the property to inspect the premises and undertake efforts to remove the dangerous condition. He needed to do nothing more than direct the dog owners to keep the dogs in the van or effectively contain them when they were in the yard. Failing that, he could have at least advised appellant, to whom he granted free access to the property, to be aware of the existence of the dogs whenever he visited. Instead, respondent consented to the unrestrained presence of the dogs on the property without informing those known to visit the premises of the potential danger. None of the precautions respondent could have taken to effectively reduce or eliminate the risk of harm were at all burdensome to him. Although we realize that the responsibility of the dog owners for the attack upon appellant may be primary, respondent's conduct is still closely connected to appellant's ensuing injury. And, considering the final *Rowland* factor, we observe that normally insurance is available for homeowners to cover the risk that eventuated here.

## DISPOSITION

We conclude that as a matter of law respondent owed a duty of care to appellant.[3] Accordingly, the judgment in favor of respondent is reversed and the case is remanded to the trial court for proceedings not inconsistent with the views expressed herein.

Costs on appeal are awarded to appellant.

Marchiano, P. J., and Margulies, J., concurred.

A petition for a rehearing was denied September 22, 2008, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied November 12, 2008, S167335.

---

[3] We do not express any views on the separate and contrasted fact-specific issues of breach of duty, causation and damages, which are posed to the trier of fact. (*McGarry v. Sax* (2008) 158 Cal.App.4th 983, 994 [70 Cal.Rptr.3d 519]; *Romito v. Red Plastic Co.* (1995) 38 Cal.App.4th 59, 66 [44 Cal.Rptr.2d 834].)