Filed 3/10/21  Colantuono v. Lake CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| PATRICK COLANTUONO, | |
| Plaintiff and Appellant, | E070592 |
| v. | (Super.Ct.No. RIC1614958) |
| THOMAS LAKE et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Daniel A. Ottolia, Judge.

Affirmed.

B & D Law Group, Daniel D. Geoulla, Babak Kheiri and Amir Salehi for Plaintiff

and Appellant.

Law Offices of Keith G. Hunter and Keith G. Hunter; Veatch Carlson, Peter H.

Crossin and Serena L. Nervez for Defendants and Respondents.

1

# I.  INTRODUCTION

On November 10, 2014, plaintiff and appellant, Patrick Colantuono, incurred an injury when he fell off a residential roof while performing work.  The homeowners, defendants and respondents, Thomas and Sandra Lake, had hired Plaster Pros, Inc., (Plaster Pros) and Eric Beyers to perform work on their home, and plaintiff was injured while working on this project.  Plaintiff filed a civil suit against Plaster Pros, Eric Beyers, and defendants[1] seeking to hold them liable for his injuries under tort theories of negligence and premises liability.

Defendants moved for summary judgment, asserting that the undisputed facts established they could not be held liable to plaintiff pursuant to *Privette v. Superior Court* (1993) 5 Cal.4th 689 (*Privette*), which generally holds that an employee of an independent contractor cannot seek recovery of tort damages from the person who hired the contractor but did not cause the employee's injuries.  (*Id.* at p. 702.)  The trial court granted defendants' motion for summary judgment and subsequently denied a motion for a new trial brought by plaintiff.  Plaintiff appeals from the judgment.  Our own independent review of the record reveals no error in the underlying proceedings, and we affirm the judgment.

---

[1]  Plaster Pros and Eric Beyers are not parties to this appeal.

## II.  FACTS AND PROCEDURAL HISTORY

### A.  *Complaint*

On November 10, 2016, plaintiff filed a civil complaint for personal injuries. Plaintiff's complaint alleged that on November 10, 2014, he was lawfully on defendants' premises when he fell off the roof due to an unspecified "dangerous activity"; defendants were negligent for failing to "address, alleviate, remove and/or remedy the dangerous activity"; defendants failed to warn him of an unspecified "dangerous condition"; the work plaintiff was performing involved a peculiar risk of harm requiring special precautions; and that defendants violated various unspecified statutory and regulatory requirements related to safe working conditions on their property.  On this basis, plaintiff alleged causes of action for premises liability and general negligence against Plaster Pros, Eric Beyers, and defendants.

### B.  *Motion for Summary Judgment*

On September 28, 2017, defendants filed a motion for summary judgment. Defendants acknowledged that they owned the residential property where plaintiff incurred his injury but argued they were entitled to summary judgment under the *Privette* line of cases because plaintiff was injured while employed by and performing work on the property for Plaster Pros and Eric Beyers, who were independent contractors hired to perform stucco work on defendants' home.

In support of their motion, defendants submitted a copy of the complaint and plaintiff's responses to interrogatories.  In response to special interrogatories asking plaintiff to identify all facts supporting his causes of action for premises liability and

3

negligence, plaintiff responded: "Responding party's employer, Plaster [Pros] was hired by [defendants] to use a pressure washing machine to clean moss from the rooftop of [defendants'] residence. . . . Responding party used a ladder to climb onto the roof over the garage to use the pressure washer to remove and clean moss from this section of the roof. Responding party took four steps onto the roof when his foot slipped on the moss saturated roof and fell off the roof to the concrete floor beneath him." Additionally, plaintiff alleged: "Responding party's employer, Plaster Pros was hired by Defendants to use a pressure washing machine to clean moss from the rooftop of Defendants' residence. [As soon] as Plaintiff commenced work that morning, he immediately noticed the defective and dangerous condition that existed on the rooftop of [the] residence. The entire rooftop of Defendants' residence was saturated and covered with moss that likely took 3 to 4 years to develop and grow to the proportions present on the rooftop. Defendants had negligently maintained the premises by not cleaning and removing any debris including moss for several years prior to the incident." In response to form interrogatories, plaintiff represented that at the time of the incident, he was employed by Plaster Pros as a plaster craftsman installing plaster for commercial and residential properties.

The motion was also accompanied by declarations from Thomas and Sandra Lake. Both stated that they (1) owned the residence where plaintiff's accident occurred; (2) contracted with Eric Beyers to perform stucco work on the residence; (3) understood the stucco work to include pressure washing on the roof; (4) did not participate in determining how the stucco work was to be performed; (5) did not direct the work to be

4

performed in any manner; (6) did not agree or promise to undertake any specific safety measures for performance of the work; and (7) and were not present at the time plaintiff was performing work and incurred his injury.

Finally, defendants submitted a copy of the written contract with Plaster Pros and Eric Beyers to perform exterior stucco work on their home. The contract included two line items related to "water blast[ing]"—one stating that Plaster Pros was to "water blast and scrape existing stucco walls," and the second stating that Plaster Pros was to "water blast [the] roof."

C. *Opposition Evidence*

On January 23, 2018, plaintiff filed an opposition to the motion for summary judgment. In his opposition, plaintiff identified seven purported disputes of fact. The purported disputes included the argument that Plaster Pros and Eric Beyers could not be considered independent contractors because they (1) failed to carry workers' compensation insurance, and (2) did not possess the correct contractor's license to perform power washing services. Plaintiff argued that if Plaster Pros and Eric Beyers were not independent contractors, then plaintiff would be considered a direct employee of defendants, precluding the application of the rule of nonliability set forth in the *Privette* line of cases.

In support of this argument, plaintiff submitted a short declaration stating he had been hired to perform work on defendants' residence that included pressure washing to remove moss from the roof of the residence; he believed such work required a general

5

contractor's license; he was not licensed as a general contractor; and he slipped while working on the roof of the residence.

Plaintiff also submitted excerpts from the deposition testimony of Thomas Lake. Mr. Lake testified that he checked to ensure that Mr. Beyers was licensed and bonded prior to hiring him, but he admitted that he did not check to see whether Mr. Beyers carried workers' compensation insurance. Additionally, Mr. Lake described the pressure washing work as an "add on"; acknowledged that the pressure washing work was intended to clean moss off his roof; acknowledged that moss on a roof "could be" dangerous to step on; and confirmed that he did not provide any equipment or warnings to Plaster Pros workers.

Plaintiff submitted a contractor's license check indicating an active class C-35 contractor's license for Plaster Pros and Eric Beyers, which is a specialty license corresponding with work involving lathing and plastering.[2] Finally, plaintiff submitted a report indicating that Plaster Pros did not have workers' compensation insurance at the time of plaintiff's injury.

Following a hearing on February 5, 2018, the trial court granted defendants' motion for summary judgment, and judgment in favor of defendants was entered on March 21.

_____

[2] Following completion of the briefing on the motion for summary judgment, plaintiff submitted an additional supplemental declaration by his counsel. However, the declaration appears to simply repeat the fact that Plaster Pros and Eric Beyers held a class C-35 contractor's license for the lathing and plastering specialty trade. Accordingly, it does not appear that this supplemental declaration provided any new or additional information to the trial court.

6

D. *Ruling and Motion for a New Trial*

On March 23, 2018, plaintiff filed a motion for a new trial. Specifically, plaintiff argued a new trial was warranted because of: (1) accident or surprise (Code Civ. Proc.,[3] § 657, subd. (3)); (2) newly discovered evidence (§ 657, subd. (4)); (3) insufficiency of evidence to justify the verdict (§ 657, subd. (6)); and (4) error in the law (§ 657, subd. (7)). In support of the motion, plaintiff submitted a statement under oath by Eric Beyers taken on the date of the summary judgment hearing, wherein Mr. Beyers confirmed he only had a class C-35 contractor's license at the time of the incident; that a C-35 license covers specialty work involving lathing and plastering; and that he has never held any other contractor's licenses. Mr. Beyers also testified that multiple aspects of his lathing and plastering work at defendants' residence would require him to get onto the roof of the residence to perform the work. Plaintiff also submitted various public guidance publications regarding considerations for hiring a contractor.[4]

On April 27, 2018, the trial court denied plaintiff's motion for a new trial, and plaintiff now appeals from the judgment.

---

[3] Undesignated statutory references are to the Code of Civil Procedure.

[4] On appeal, plaintiff has requested we take judicial notice of additional online publications and guidance by various government entities. It does not appear that any of these materials were presented to the trial court on summary judgment. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; see *Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 673, fn. 4.) We therefore deny the request in full.

## III.  DISCUSSION

A. *Summary Judgment Was Properly Granted*

### 1. Standard of Review

"The standard of review for an order granting a motion for summary judgment is de novo.  [Citation.]  [¶]  In performing our independent review, we apply the same three-step process as the trial court.  'Because summary judgment is defined by the material allegations in the pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought.'  [Citation.]  [¶]  'We then examine the moving party's motion, including the evidence offered in support of the motion.'  [Citation.]  A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action.  [Citation.]  . . .  [¶]  [I]f the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact."  (*Ryan v. Real Estate of Pacific*, *Inc*. (2019) 32 Cal.App.5th 637, 642.)

### 2. Issues Framed by the Pleadings

We begin by considering the issues as framed by plaintiff's pleading.  Generally, "[t]he pleadings play a key role in a summary judgment motion and ' " 'set the boundaries of the issues to be resolved at summary judgment.' " ' "  (*Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 444.)  Nevertheless, "[d]iscovery necessarily serves the function of . . . enabling a party to determine what his

opponent's contentions are and what facts he relies upon to support his contentions."

(*Burke v. Superior Court of Sacramento County* (1969) 71 Cal.2d 276, 281.)  Thus, to the

extent that discovery is "used to clarify the contentions of the parties, [it is] an adjunct to

the pleadings."  (*Ibid.*; *Jacobs*, at p. 445 [discovery responses may be relied upon to " '

"narro[w] the issues made by the pleadings" ' " in summary judgment proceeding].)

Here, plaintiff's complaint states causes of action for premises liability and

negligence against defendants.  "The elements of a cause of action for premises liability

are the same as those for negligence:  duty, breach, causation, and damages."  (*Castellon

v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.)  Further, in response to contention

interrogatories, plaintiff states he was employed by Plaster Pros; defendants had hired

Plaster Pros to perform work on their home; and plaintiff was injured while performing

that work.  These allegations provide additional framework for analyzing the issues

presented on summary judgment, as they impact the existence of any duty owed by

defendants.

"At common law, a person who hired an independent contractor to perform a task

generally was not liable to third parties for injuries caused by the independent

contractor's negligence.  Central to this rule of nonliability ' "was the recognition that a

person who hired an independent contractor had ' "no right of control as to the mode of

doing the work contracted for." ' " ' " (*Delgadillo v. Television Center, Inc.* (2018)

20 Cal.App.5th 1078, 1086 (*Delgadillo*).)  However, in its 1993 decision in *Privette*, our

Supreme Court observed that "[o]ver time, the courts have, for policy reasons, created so

many exceptions to this general rule of nonliability that ' " 'the rule is now primarily

9

important as a preamble to the catalog of its exceptions.' " ' " (*Privette*, *supra*, 5 Cal.4th at p. 693.) In response, it developed what became known as the "*Privette* rule," which holds that "[g]enerally, when employees of independent contractors are injured in the workplace, they cannot sue the party that hired the contractor to do the work." (*SeaBright Ins. Co. v. US Airways, Inc.* (2011) 52 Cal.4th 590, 594 (*Seabright Ins. Co.*).)

In developing this rule, our Supreme Court listed various equitable considerations that weighed against permitting the employee of an independent contractor to bring a civil tort action against the person who hired the contractor. (*Privette*, *supra*, 5 Cal.4th at pp. 697-702.) Among other things, our Supreme Court noted that the workers' compensation scheme would preclude a nonnegligent hirer from obtaining indemnity from an otherwise negligent employer who may be more responsible for the worker's injury; that it would be inequitable to hold a hirer liable while allowing a worker's direct employer to be shielded from liability under workers' compensation exclusivity rules since the hirer indirectly pays for the premiums for workers' compensation coverage by virtue of its contract for work; and that allowing employees of independent contractors an additional source of recovery in tort provides a windfall that other workers who incur identical occupational injuries would not be able to enjoy. (*Id.* at pp. 698-700.)

The Supreme Court has since explained that the *Privette* rule implicates the scope of the hirer's tort duty to the plaintiff. (*Kinsman v. Unocal Corp.* (2005) 37 Cal.4th 659, 674 ["the teaching of the *Privette* line of cases is that a hirer has no duty to act to protect the employee when the contractor fails in that task"].) "In subsequent cases, the Supreme Court [has] expanded the *Privette* doctrine to hold that a hirer [cannot] be held

10

vicariously liable to an independent contractor's employees under a variety of tort theories." (*Delgadillo*, *supra*, 20 Cal.App.5th at p. 1087.)

Thus, as framed by the pleadings and plaintiff's subsequent responses to contention interrogatories, the issue presented on summary judgment is whether defendants produced evidence to support the application of the *Privette* rule and thereby negate the essential element of duty and, if so, whether plaintiff's opposition produced evidence sufficient to show a triable issue of material fact precluding summary judgment.

3.  Defendants Met Their Initial Burden in Moving for Summary Judgment

"The *Privette* line of decisions establishes a presumption that an independent contractor's hirer 'delegates to that contractor its tort law duty to provide a safe workplace for the contractor's employees.' " (*Alvarez v. Seaside Transportation Services LLC* (2017) 13 Cal.App.5th 635, 642.)  Thus, in a case involving the *Privette* rule, a defendant meets his initial burden on summary judgment by providing the "requisite factual foundation for the *Privette* presumption to apply" because "a moving party need only show it is entitled to the benefit of a presumption affecting the burden of producing evidence in order to shift the burden of proof to the opposing party to show there are triable issues of fact." (*Alvarez*, at p. 644.)

The record on summary judgment includes a copy of a contract between defendants and Plaster Pros/Eric Beyers for stucco work on defendants' home that

11

included pressure washing the roof;[5] plaintiff's verified interrogatory responses that confirmed plaintiff incurred an injury while pressure washing defendants' roof in the course of his employment with Plaster Pros; and documentation that Plaster Pros/Eric Beyers had an active class C-35 contractor's license at the time.[6] This evidence was sufficient to establish the requisite factual foundation for application of the *Privette* presumption, as it showed that defendants hired a licensed contractor to perform work on their home, and that plaintiff was injured while employed by and performing work for that contractor. As such, the burden shifted to plaintiff to produce evidence of a triable issue of material fact precluding summary judgment.

---

[5] In opposition, plaintiff argued that there was insufficient evidence of a contract because the document was not executed. However, the document was authenticated as a "true and correct copy of the contract" in Mr. Lake's declaration, and plaintiff does not appear to renew this argument on appeal.

[6] At least one case has held that a defendant seeking to rely on the *Privette* presumption must produce evidence that the alleged independent contractor had the required license or that no license was needed for the services to be performed in order to meet the defendant's initial burden on summary judgment. (*Blackwell v. Vasilas* (2016) 244 Cal.App.4th 160, 172-173.) While defendants did not provide evidence pertaining to Plaster Pros or Eric Beyers's licensure with their moving papers, plaintiff provided evidence of their active contractor's license in opposition. It has long been the rule that "[i]n summary judgment proceedings, gaps in a party's evidentiary showing may certainly be filled by the opposing party's evidence." (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1289.) "This rule is based on the statutory command that the court consider 'all the papers' in making its ruling." (*Ibid.*; see *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 750-751 [no error in the trial court's reliance on evidence produced by plaintiff in opposition to summary judgment in order to fill an evidentiary gap left in the moving defendant's evidence].)

12

4. <u>Plaintiff Did Not Produce Evidence To Establish a Material Dispute of Fact</u>

In opposition to summary judgment, plaintiff argued the existence of seven disputed facts precluding summary judgment. However, on appeal, plaintiff does not renew all of these arguments. Instead, plaintiff contends only that the *Privette* rule does not apply because Plaster Pros and Eric Beyers cannot be considered independent contractors based upon their failure to obtain workers' compensation insurance or, alternatively, their failure to have the correct contractor's license to perform power washing work. Plaintiff reasons that under either scenario, he would be considered the direct employee of defendants under Labor Code section 2750.5; and, as his direct employer, defendants are not entitled to the benefit of the *Privette* rule. However, this argument fails for several, independent reasons.

a. *Plaintiff is not entitled to assert new theories of liability for the first time in opposition*

Initially, we note that plaintiff cannot overcome summary judgment by introducing new theories of liability based upon unpleaded facts. "The pleadings delimit the issues to be considered on a motion for summary judgment. [Citations.] Thus, a 'defendant moving for summary judgment need address only the issues raised by the complaint; the plaintiff cannot bring up new, unpleaded issues in his or her opposing papers.' [Citation.] 'To create a triable issue of material fact, the opposition evidence must be directed to issues raised by the pleadings. [Citation.] If the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the

13

summary judgment motion. . . . [Plaintiff's] separate statement of material facts is not a substitute for an amendment of the complaint.' " (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1253.)

Here, plaintiff's complaint did not allege that he had an employer-employee relationship with defendants; did not allege any facts to suggest such a relationship existed; and did not allege any facts to suggest that defendants were liable to plaintiff by virtue of any duty owed as plaintiff's employer. Nor did plaintiff disclose such a theory or the facts upon which it is based when asked to set forth his specific allegations in response to interrogatories. Indeed, plaintiff confirmed the exact opposite—again alleging that Plaster Pros was his employer at the time. Plaintiff cannot assert a new theory for the first time in opposition to summary judgment where he neither alleged such a theory or the facts in support of such a theory in the pleadings or subsequent discovery.[7]

b. *Plaintiff is not entitled to contradict his own sworn discovery responses in an attempt to create a triable issue of fact*

Even if we were to overlook plaintiff's failure to allege a theory of liability premised upon an employer relationship, plaintiff would still be precluded from creating a triable issue of material fact by contradicting his own, verified interrogatory responses.

---

[7] This represents a stark contrast from the primary case upon which plaintiff encourages us to rely on appeal. In *Mendoza v. Brodeur* (2006) 142 Cal.App.4th 72, the plaintiff's complaint specifically alleged he was a direct employee of the defendant and specifically cited to the relevant Labor Code provisions entitling him to sue the defendant as his direct employer. (*Mendoza,* at p. 313.)

14

"It is well established that 'a party cannot create an issue of fact by a declaration which contradicts his prior discovery responses.' [Citations.] In determining whether any triable issue of material fact exists, the trial court may give 'great weight' to admissions made in discovery and 'disregard contradictory and self-serving affidavits of the party.' [Citations.] Our Supreme Court has explained that such admissions 'have a very high credibility value,' particularly when they are 'obtained not in the normal course of human activities and affairs but in the context of an established pretrial procedure whose purpose is to elicit facts.' [Citation.] . . . Where a declaration submitted in opposition to a motion for summary judgment clearly contradicts the declarant's earlier deposition testimony or discovery responses, the trial court may fairly disregard the declaration and ' "conclude there is no *substantial* evidence of the existence of a triable issue of fact." ' " (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1087.)

Here, plaintiff was specifically asked in a form interrogatory whether he was acting as an employee or agent of any persons at the time of his injury. In response, plaintiff unambiguously identified Plaster Pros and Eric Beyers as his employer without any mention of defendants. When asked to set forth all the facts in support of his claims against defendants, plaintiff again unambiguously stated that Plaster Pros was his employer without any suggestion that defendants were also his employers. Plaintiff cannot attempt to create a dispute of fact by arguing a position directly contradicted by his own verified responses to discovery without some attempt to explain the discrepancy. This represents an additional, independent ground for concluding plaintiff failed to create a triable issue of material fact sufficient to preclude summary judgment.

15

c. *The failure of plaintiff's employer to obtain workers' compensation insurance does not create a dispute of fact*

Finally, even if we were to consider the merits of plaintiff's claims, the evidence presented in opposition was insufficient to show a material dispute precluding summary judgment. Plaintiff contends that the failure of Plaster Pros and Eric Beyers to procure workers' compensation insurance as required by law creates a dispute of fact as to whether defendants are entitled to the protection of the *Privett*e rule. Specifically, plaintiff argues that under Business and Professions Code section 7125.2, an otherwise active contractor's license is automatically suspended when the contractor fails to obtain required workers' compensation insurance. Based upon this reasoning, plaintiff argues that if Plaster Pros and Eric Beyers were not properly licensed, they cannot be considered independent contractors and the *Privette* rule is inapplicable. We disagree.

While Business and Professions Code section 7125.2 does indeed operate to suspend a contractor's license for failure to obtain workers' compensation insurance (Bus. & Prof. Code, § 7125.2), this provision is part of a larger statutory scheme intended to protect the public by imposing " 'strict and harsh penalties for a contractor's failure to maintain proper licensure.' " (*Loranger v. Jones* (2010) 184 Cal.App.4th 847, 854.) The statutory scheme imposes various consequences on the *contractor* for failing to maintain proper licensure or other requirements that are intended to incentivize the *contractor* to comply. (*Ibid.*)

In contrast, whether a duty of care exists in a negligence action is derived from common law principles. (See *McDaniel v. Sunset Manor Co.* (1990) 220 Cal.App.3d 1,

16

6-7.) As explained by our Supreme Court, "[w]hether a new duty should be imposed in any particular context is essentially a question of public policy," and the court may decline to impose a duty "if other policy considerations clearly require an exception." (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 628-629.) As we have already explained, the *Privette* rule limits the common law tort duty of a hirer. It was judicially created and expanded by the California Supreme Court upon considerations of fairness and equity. Thus, the Legislature's suspension of a contractor's license in response to the contractor's wrongdoing does not necessarily implicate the common law tort duty of a third party as developed by the courts. Instead, as a common law rule recognizing the limitation of a hirer's tort duty, the application of the *Privette* rule is governed by whether the policy considerations underlying that rule exist in the context of the case.

To this end, more than one Court of Appeal has considered this issue and concluded that the *Privette* rule of nonliability applies to shield a hirer from liability for injury to an independent contractor's employees, even where the independent contractor fails to procure the required workers' compensation insurance. In *Lopez v. C.G.M. Development*, *Inc.* (2002) 101 Cal.App.4th 430 (*Lopez*), our colleagues in the Second District Court of Appeal reviewed at least five Supreme Court cases discussing the equitable principles underlying the *Privette* rule of nonliability and concluded that those same principles should apply regardless of whether the hired contractor actually procured workers' compensation insurance. (*Lopez*, at pp. 444-445.) Specifically, the Court of Appeal noted it would be inequitable to penalize the hirer simply because the contractor

17

failed to comply with its statutory obligations; that the workers' compensation scheme already provides an injured worker with an avenue for tort recovery against the actual wrongdoer by allowing a civil suit against the uninsured contractor; and that the worker is not deprived of any benefit that would otherwise have been conferred by workers' compensation insurance because the statutory scheme provides for immediate access to benefits through the uninsured employers fund. (*Id.* at p. 445.)

Likewise, in *Bell v. Greg Agee Construction*, *Inc.* (2004) 125 Cal.App.4th 453 (*Bell*), our colleagues in Division One of this appellate district reached the same conclusion. (*Id.* at p. 466.) In doing so, they emphasized the fact that since an injured employee may obtain workers' compensation through the uninsured employer's fund, "the fundamental social policy of providing compensation to an injured employee is achieved by the workers' compensation system, [and] there is no justification for imposing vicarious liability on [the contractor's hirer]." (*Ibid*.) The injured worker's access to such benefits "eliminate[d] the need to impose liability 'to ensure that innocent third parties injured by the negligence of an independent contractor hired by a landowner . . . would not have to depend on the contractor's solvency in order to receive compensation for the injuries.' " (*Ibid.*) As such, the Court of Appeal concluded that under the reasoning of *Privette*, the contractor's uninsured status for purposes of workers' compensation should not impact the hirer's tort liability. (*Bell*, at p. 467.)

We agree with our colleagues in *Lopez* and *Bell* that the underlying policy considerations and balance of equities upon which the *Privette* rule is based remain the same even when a contractor fails to obtain workers' compensation insurance for the

18

injured plaintiff.[8]  As these authorities point out, the injured worker remains eligible for compensation for his injuries under the workers' compensation scheme, and that very scheme also provides for a means of tort recovery against the contractor who actually engaged in wrongdoing.  As such, there is no equitable need to extend tort liability to nonnegligent hirers to ensure a source of recovery.  Nor does this conclusion run contrary to the purpose of Business and Professions Code section 7125.2, which is intended to incentivize *contractors* to comply with their workers' compensation obligations.[9]  Where all of the equitable considerations underlying the application of the *Privette* rule exist, we see no reason why the rule should not be applied to limit the extent of a defendant's common law tort duty.  Accordingly, the failure of Plaster Pros to obtain workers' compensation insurance does not create a dispute of fact precluding summary judgment.

_____

[8]  Plaintiff's suggestion at oral argument that these authorities are no longer applicable because subsequent amendments to Business and Professions Code section 7125 suggest a legislative intent to extend liability to homeowners in the absence of workers' compensation insurance is without merit.  The statutory provision imposes a duty upon the Contractors State License Board to verify that a contractor has a valid policy of workers' compensation insurance prior to the issuance, reinstatement, reactivation, renewal, or continued maintenance of a license. (*Bus. & Prof. Code*, § 7125.)  Nothing in this section references hirers or suggests that tort liability should be shifted onto third persons in the event a contractor fails to comply with such workers' compensation insurance requirements.

[9]  Indeed, the Labor Code specifically subjects an employer to tort liability for a worker's injury in the event the employer fails to procure workers' compensation insurance. (Lab. Code, § 3706.)  Such provision is intended to encourage employers to obtain workers' compensation insurance by exposing them to greater liability in a civil tort action. (*Lopez*, *supra*, 101 Cal.App.4th at p. 445.)  Allowing the injured employee to also seek tort recovery against an otherwise nonnegligent hirer in effect allows the uninsured employer to shift the risk it would otherwise face as a consequence for its failure to procure workers' compensation insurance onto other parties.

19

d. *The act of power washing does not create a dispute of fact*

Alternatively, plaintiff argues that the fact that defendants' contract included power washing their roof creates a dispute of fact because Plaster Pros and Eric Beyers only held a class C-35 contractor's license, which purportedly does not permit them to engage in providing power washing services. Plaintiff reasons that hiring a contractor to perform work outside the scope of the contractor's license is akin to hiring an unlicensed contractor, precluding the contractor from being considered an independent contractor under Labor Code section 2750.5.

Labor Code section 2750.5 generally provides that a worker performing services for which a license is required is an employee rather than an independent contractor, and that holding a valid contractor's license is a condition of having independent contractor status. (*Jones v. Sorenson* (2018) 25 Cal.App.5th 933, 942 (*Jones*).) We note that our Supreme Court has repeatedly stated that "[t]he question whether an unlicensed contractor's worker must be deemed a homeowner-hirer's employee under Labor Code section 2750.5 for purposes of tort liability is neither an easy nor settled one." (*Ramirez v. Nelson* (2008) 44 Cal.4th 908, 916; see *Cortez v. Abich* (2011) 51 Cal.4th 285, 291 [describing the issue as "difficult and unsettled"].) However, multiple Courts of Appeal have extended its application to tort cases, and at least one Court of Appeal has observed that the Legislature appears to have acquiesced to these judicial interpretations extending the impact of Labor Code section 2750.5 to tort liability. (*Jones*, at p. 943.) We need not discuss the matter in detail here because, even assuming Labor Code section 2750.5

20

applies for purposes of tort liability, plaintiff's evidence in this case failed to establish the requisite factual foundation for application of that statute.

"The Business and Professions Code describes the contracting business as consisting of three branches, with three parallel classifications for contractors' licenses: class A (general engineering contractor), class B (general building contractor), and class C (covering 'specialty' licenses)." (*Vallejo v. Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 939.) "A class C contractor's license is for specialty contractors 'whose operations involve the performance of construction work requiring special skill and whose principal contracting business involves the use of specialized building trades or crafts' " and "numerous subclassifications of specialty contractors are listed in California Code of Regulations, title 16, section 832." (*Denver D. Darling, Inc. v. Controlled Environments Construction, Inc.* (2001) 89 Cal.App.4th 1221, 1230, fn. 2.) The last subclassification under this category is a class C-61 license for "limited specialties." (Cal. Code Regs., tit. 16, § 832.61.) "In contrast to all other classes, the C-61 class [is] reserved for subclassifications of the other classes." (*Davies v. Contractors' State License Bd.* (1978) 79 Cal.App.3d 940, 949, fn. 6.) These subclassifications are organized into "D" subcategories by the State Contractor's Licensing Board. (See *Jones*, *supra*, 25 Cal.App.5th at p. 937, fn. 2 [recognizing that "D" subclassifications fall under the C-61 class].)

Plaintiff's contention is that power washing falls under "sand and water blasting" activities described in one of the "D" subcategories of a C-61 license and that as a result,

21

Plaster Pros and Eric Beyers could not contract for that work under their class C-35 license.[10] This argument fails for two, independent reasons.

First, it is unclear whether the licensing under the "D" subcategories is actually required, since those subcategories do not appear to actually be set forth in any regulations, and state agencies are not permitted to enforce rules that have not been adopted as regulations. (Gov. Code, § 11340.5, subd. (a).)

Second, the regulations governing the class C-61 license under which all of the "D" subcategories fall expressly states that "[a] specialty contractor, *other than a C-61 contractor*, may perform work within the field and scope of the operations of Classification C-61, provided the work is consistent with established usage and procedure in the construction industry and is related to the specialty contractor's classification." (Cal. Code Regs., tit. 16, § 832.61, subd. (d), italics added.) Thus, the regulatory scheme expressly permits contractors holding other specialty licenses to perform work otherwise categorized as a "limited specialty" under the class C-61 license. It is undisputed that Plaster Pros and Eric Beyers held a class C-35 contractor's license at the time of plaintiff's injuries. As such, evidence that they engaged in activity covered by a C-61

---

**10** Plaintiff also argues that the work he was performing required a class C-39 license, applicable to roofing contractors. However, a C-39 license is not required simply because a contractor might traverse a roof in order to perform his or her work. Instead, the regulations provide that a "roofing contractor installs products and repairs surfaces that seal, waterproof and weatherproof structures. . . ." (Cal. Code Regs., tit. 16, § 832.39.) There is no evidence in this case that plaintiff was on the roof for the purpose of installing any product or repairing any surface in order to seal or waterproof defendants' home at the time of his accident. Instead, the undisputed facts in the record are that plaintiff was on the roof to power wash for the purpose of cleaning moss off the roof. Thus, we need not discuss this argument in any further detail.

license does not, on its own, create an inference they were engaged in work for which they were not appropriately licensed under the Business and Professions Code. Plaintiff produced no other evidence to suggest that the power washing work was performed inconsistently with established usage or procedure in the construction industry or to suggest that power washing generally is unrelated to the work performed in the lathing and plastering specialty requiring additional licensure.

Plaintiff extensively argues that Plaster Pros and Eric Beyers's C-35 licensure cannot be considered sufficient under the circumstances because power washing work is not " 'incidental' or 'supplemental' " to the stucco work they were otherwise hired to perform. However, this argument addresses a different provision found in section 7059 of the Business and Professions Code,[11] and the terms "incidental" and "supplemental" are not used in describing any limitations on the work permissible under Code of Regulations, title 16, section 832.61, subd. (d).[12] While there may be situations in which this provision overlaps with title 16, section 832.61, subd. (d), the two provisions are

---

[11] Business and Professions Code section 7059 provides: "Nothing contained in this section shall prohibit a specialty contractor from taking and executing a contract involving the use of two or more crafts or trades, if the performance of the work in the crafts or trades, other than in which he or she is licensed, is incidental and supplemental to the performance of the work in the craft for which the specialty contractor is licensed." This statute is incorporated into a different regulation under Code of Regulations, title 16, section 831.

[12] Generally, the same rules governing the interpretation of statutes apply to the interpretation of administrative regulations (*Berkeley Hills Watershed Coalition v. City of Berkeley* (2019) 31 Cal.App.5th 880, 890), and where different words are used as part of the same statutory scheme, those words are presumed to have different meanings. (*Romano v. Mercury Ins. Co.* (2005) 128 Cal.App.4th 1333, 1343.)

clearly not coextensive. As such, the fact that power washing in this case might not have fallen under the regulatory definition of "incidental or supplemental" work is not relevant.

Thus, even assuming Labor Code section 2750.5 creates a presumption of employment in tort cases, plaintiff was required to produce evidence of the requisite facts necessary to invoke this presumption in order to show a triable issue of material fact in opposition to summary judgment. Simply producing evidence that Plaster Pros and Eric Beyers held a class C-35 contractor's license and noting that power washing falls under a subcategory included under a class C-61 license was not sufficient because persons holding otherwise valid specialty licenses are expressly permitted to perform activities covered under a class C-61 license. Absent more, plaintiff failed to produce evidence to suggest that Plaster Pros and Eric Beyers were engaged in work requiring a contractor's license other than the one they undisputedly held.[13] Without evidence of the requisite factual basis for application of Labor Code section 2750.5, plaintiff's evidence failed to show a triable issue of material fact precluding summary judgment.

---

[13] Such evidence might come by way of an expert declaration or discovery presented through an expert setting forth the proper scope of duties of a contractor holding a C-35 contractor's license.

B. *The Trial Court Did Not Abuse Its Discretion in Denying Plaintiff's Motion for a New Trial*

Plaintiff also argues the trial court erred in denying his motion for a new trial following summary judgment.  We disagree.

"An order granting summary judgment is properly challenged by a motion for a new trial.  [Citation.]  'This is so, even though, strictly speaking, "summary judgment . . . is a determination that there shall be no trial at all." '  [Citations.]  The new trial motion may seek reversal of the summary judgment on the ground that there are triable issues of fact.  [Citation.]  In addition, the motion may assert that the summary judgment should be reversed because there is 'newly discovered evidence.' "  (*Doe v. United Air Lines*, *Inc.* (2008) 160 Cal.App.4th 1500, 1504-1505.)  "The determinations underlying the new trial order dictate our standard of review.  [Citation.]  To the extent the order relies on the resolution of a question of law, including the existence of triable issues of fact, we examine the matter de novo.  [Citations.]  To the extent the order relies on the assertion of newly discovered evidence, we examine the order for an abuse of discretion."  (*Id.* at p. 1505.)

Following summary judgment, plaintiff moved for a new trial on four grounds: (1) accident or surprise (§ 657, subd. (3)); (2) newly discovered evidence (§ 657, subd. (4)); (3) insufficiency of evidence to justify the verdict (§ 657, subd. (6)); and (4) error in the law (§ 657, subd. (7)).  Because we find no error in the trial court's granting summary judgment, we necessarily also conclude that plaintiff's request for a new trial based upon the alleged insufficiency of the evidence or error in law are without

25

merit.  We are left to consider only whether the trial court abused its discretion when denying the motion for a new trial on the remaining two grounds.

Plaintiff's claim of accident and surprise and newly discovered evidence are premised on the same facts.  Specifically, plaintiff argues that Eric Beyers failed to respond to discovery or appear for a deposition and plaintiff, therefore, was unable to obtain meaningful information from Mr. Beyers until the day of the summary judgment hearing, at which time Mr. Beyers provided a statement under oath.  However, "it must be remembered that the statutory grounds are 'accident or surprise, which ordinary prudence could not have guarded against' [citation], and 'newly discovered evidence' which the moving party 'could not, with reasonable diligence, have discovered and produced at the trial.' " (*Fletcher v. Pierceall* (1956) 146 Cal.App.2d 859, 866.)  Thus, "the moving party to be entitled to a granting of the motion must make a showing of injury, a showing of diligence, and a showing that he did not unduly delay seeking redress. . . .  [T]o be successful, [the motion] requires the evidence not only be newly discovered but that, had 'strict diligence' been used, it would not have been discovered sooner." (*Ibid.*)

As relevant here, plaintiff's proffered "newly discovered" evidence consisted of various online publications and guidance related to contracting work and a statement under oath by Eric Beyers.  Clearly the publications and public guidance are not newly discovered, and plaintiff offered no explanation for why such information could not have been produced at the time he filed opposition to summary judgment.  With respect to the statement of Eric Beyers, Mr. Beyers has been a named defendant in plaintiff's suit from

26

the outset. While plaintiff's counsel offered a declaration stating that Mr. Beyers failed to respond to written discovery and failed to appear for depositions, counsel did not explain when discovery was served on Mr. Beyers; did not set forth that any discovery motions were filed in response to Mr. Beyers's alleged failure to respond; and did not set forth what information Mr. Beyers held, which could not have been obtained from other sources. Absent an adequate showing of diligence, the trial court was not required to grant a motion for a new trial on the basis of surprise or newly discovered evidence, and we find no abuse of discretion in the trial court's denial of plaintiff's motion for a new trial.

Further, even if the trial court were to overlook plaintiff's lack of diligence with respect to obtaining discovery from Mr. Beyers, to justify a new trial "newly discovered evidence must be material in the sense that it is likely to produce a different result." (*Hill v. San Jose Family Housing Partners*, *LLC* (2011) 198 Cal.App.4th 764, 779.) Here, the purported "newly discovered evidence" contained in Mr. Beyers statement under oath simply confirmed that he held a class C-35 contractor's license at the time of the incident; that a class C-35 license covers lathing and plastering work; and that he has never held any other type of contractor's license. These were facts already known at the time of summary judgment and it is entirely unclear why plaintiff believes these facts

would have been likely to produce a different result.[14]  The failure to identify new evidence that is material is a separate ground for denying a motion for a new trial and further supports our conclusion the trial court did not abuse its discretion here.

### IV.  DISPOSITION

The judgment is affirmed.  Respondents to recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS_____

J.

We concur:


MILLER_____
   Acting P. J.



SLOUGH_____
    J.

---

[14]  Arguably, the declaration of Mr. Beyers further reinforced defendants' right to summary judgment in this case.  Mr. Beyers testified that his lathing and plastering work required traversing the roof of the residence in order to complete the work.  Generally, employers owe a duty to provide their own employees a safe workplace.  (*SeaBright Ins. Co.*, *supra*, 52 Cal.4th at p. 603.)  Thus, if the moss on defendants' roof represented a dangerous condition as plaintiff claims, then Plaster Pros and Mr. Beyers had a duty to remedy that condition to ensure that their own employees could safely traverse the roof to complete their stucco work.  This would suggest cleaning the roof was essential to the stucco work being performed; was "incidental and supplemental" work under Business and Professions Code section 7059; and did not require a separate license.  Rather than assisting plaintiff's arguments, Mr. Beyers's statement instead supports the conclusion that cleaning the roof did not require a separate license and could not be relied upon to invoke the statutory presumption of employment set forth in Labor Code section 2750.5.